### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| STO PROPERTIES, LLC | § | CASE NO. 09-54228 |
| | § | |
| and | § | |
| | § | |
| STO OPERATING COMPANY | § | CASE NO. 09-54229 |
| STO DRILLING COMPANY | § | CASE NO. 09-54230 |
| SOUTHERN TEXAS OIL COMPANY | § | CASE NO. 09-54231 |
| SOUTH TEXAS OIL COMPANY | § | CASE NO. 09-54233 |
| | § | |
| | § | **JOINT ADMINISTRATION** |
| DEBTORS | § | **REQUESTED** |

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO
11 U.S.C. SECTIONS 105, 361, 362, 363 AND 507 AND FEDERAL RULES OF
BANKRUPTCY PROCEDURE 2002, 4001 AND 9014
(I) AUTHORIZING USE OF CASH COLLATERAL;
(II) GRANTING SECURITY INTERESTS AND
SUPERPRIORITY CLAIMS AND GRANTING OTHER ADEQUATE PROTECTION;
(III) MODIFYING THE AUTOMATIC STAY; AND
(IV) SCHEDULING A FINAL HEARING ON THE MOTION**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

South Texas Oil Company, Southern Texas Oil Company, STO Operating Company (Debtor in case No. 09-12573-cag originally filed on September 11, 2009 as an Involuntary Case under Chapter 7 in the Austin Division; no Order For Relief entered; hearing scheduled for November 17, 2009), STO Properties LLC and STO Drilling Company (collectively, the "Debtors")[1], the Debtors in the above captioned cases (the "Cases"), hereby file this *Emergency Motion for Interim and Final Orders Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, and 507 and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (I) Authorizing the*

---

[1] The debtors in these chapter 11 cases are South Texas Oil Company, Southern Texas Oil Company, STO Operating Company (Originally filed on September 11, 2009 as an Involuntary Case under Chapter 7 in the Austin Division under case No. 09-12573-cag), STO Properties LLC and STO Drilling Company.

*Debtors' Use of Cash Collateral; (II) Granting Security Interests and Superpriority Claims and Granting Adequate Protection; (III) Scheduling a Final Hearing on the Motion* (the "Motion") and in support of this Motion, the Debtors respectfully represent as follows:

## I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.    PROCEDURAL BACKGROUND

1.      On October 29, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code").

2.      The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No creditors' committee has been appointed in these Cases by the United States Trustee. Further, no trustee or examiner has been requested or appointed.

3.      The statutory predicates for the relief requested herein are sections 105, 361, 362, 363 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure.

4.      A motion requesting the joint administration of the Debtors' estates is pending before this Court.

5.      A further description of the background of the Debtors and the events leading up to the filing of the voluntary petitions by the Debtors, is provided in the Declaration of Mike Pawelek in Support of First Day Pleadings, which is incorporated by reference herein.

### III.     FACTUAL BACKGROUND

**A.      Prepetition Loans and Liens.**

1.      Prior to the Petition Date, The Longview Fund, L.P. ("Longview"), and Longview Marquis Master Fund, L.P. ("Marquis") made certain loans and other financial accommodations available to South Texas Oil Company (the "Borrower") pursuant to certain senior notes (as amended, restated, supplemented, or otherwise modified from time to time, the "Initial Notes") issued in connection with that certain Securities Purchase Agreement dated April 1, 2008 between the Borrower Longview and Marquis and together with all instruments, agreements, and documents related thereto or executed in connection therewith (collectively, as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "Initial Loan Documents"). Pursuant to the Initial Loan Documents, Longview and Marquis agreed to provide Borrower with a credit facility of $32,500,000.

2.      Pursuant to that certain Securities Purchase Agreement dated September 19, 2008, between Borrower and Marquis, Borrower issued to Marquis a senior note (as amended, restated, supplemented, or otherwise modified from time to time, the "Bridge Note") in an original principal amount of $7,000,000 and together with all instruments, agreements, and documents related thereto or executed in connection therewith (collectively, as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "Bridge Loan Documents" and together with the Initial Loan Documents, the "Prepetition Documents").

On May 18, 2009, the Borrower completed a debt restructuring with Longview after which the Borrower had no remaining note payable or related accrued interest payable balances with Longview under the Initial Loan Documents.

3.     On May 29, 2009, Marquis provided the Borrower with notice that Marquis had transferred approximately 25% of each of the Initial Notes and Bridge Note it held, along with certain other rights and interests, to Summerview Marquis Fund, L.P. ("Summerview" and together with Marquis, the "Prepetition Lenders").

4.     The Debtors represent, stipulate, acknowledge, and agree that as of the Petition Date, the Borrower was indebted to the Prepetition Lenders under the Initial Loan Documents in the approximate aggregate principal amount of $9,245,061 and under the Bridge Loan Documents in the approximate aggregate principal amount of $7,220,260 (such principal amounts, together with all interest, fees, costs, expenses (including, without limitation, attorneys', accountants' and financial advisors' fees), and other amounts heretofore or hereafter accruing thereon or at any time chargeable to the Borrower in connection with the Prepetition Loan Documents, is collectively referred to herein as, the "Prepetition Indebtedness").

5.     The Debtors represent, stipulate, acknowledge, and agree that the Prepetition Indebtedness is (i) legal, valid, binding, and enforceable against the Borrower; and (ii) not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack, or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, equity, or otherwise.

6.     In connection with the execution of the Prepetition Loan Documents, Southern Texas Oil Company, STO Operating Company, STO Properties LLC and STO Drilling Company (collectively, the "Guarantors") provided a guaranty of the Borrower's full and prompt

payment of its indebtedness, liabilities, and obligations to the Prepetition Lenders. In connection therewith, each of the Guarantors executed that certain Guaranty dated as of April 1, 2008 and that certain Guaranty dated September 19, 2008 (collectively, as the same may be amended, restated, supplemented, or otherwise modified, the "Guaranties") in favor of Summerline Asset Management, LLC, as agent ( as successor in interest via assignment from Viking Asset Management, LLC solely in its capacity as collateral agent, the "Agent"), for the benefit of Agent and the Prepetition Lenders. By execution of this Interim Order, each of the Guarantors hereby (i) reaffirms, ratifies, and confirms that the Guaranties, and the Guarantors' obligations thereunder, remain in full force and effect notwithstanding, among other things, any financial accommodations extended by the Prepetition Lenders to any of the Debtors pursuant to the terms of this Interim Order; (ii) denies and waives the existence of any defenses or right of setoff which may otherwise be available to the Guarantors relating to the Guaranties; and (iii) waives and releases any and all of the Guarantors' claims, counterclaims, and causes of action that may exist under the Guaranties against the Prepetition Lenders.

7. As security for the payment of the Prepetition Indebtedness, the Debtors represent, stipulate, acknowledge, and agree that the Debtors granted to the Agent for the benefit of the Prepetition Lenders, pursuant to, *inter alia*, the Amended and Restated Security Agreement dated April 1, 2008, Security Agreement dated September 19, 2009, Mortgages dated April 1, 2008, Mortgages dated September 19, 2008, Pledge Agreement dated April 1, 2008, and Pledge Agreement dated September 19, 2008, in each case, as the same is amended, restated, supplemented, or otherwise modified from time to time, security interests in and liens upon all of the Debtors' property and assets as more fully described in the Prepetition Loan Documents (all such property, as the same existed on or at any time prior to the Petition Date, together with all

cash and non-cash proceeds thereof, being hereinafter referred to as, the "Prepetition Collateral" and such liens thereon shall be referred to as the "Prepetition Liens").

8.    The Debtors represent, stipulate, acknowledge, and agree that the Prepetition Liens are legal, valid, enforceable, non-avoidable, and duly perfected security interests in and liens upon the Prepetition Collateral and, as of the Petition Date, and without giving effect to this Interim Order, the Debtors are not aware of any liens or security interests having priority over the Prepetition Liens, except certain "Permitted Liens" (as defined in the Prepetition Loan Documents) to the extent such Permitted Liens are legal, valid, enforceable, non-avoidable, duly perfected, and have priority pursuant to applicable non-bankruptcy law.  The Debtors further represent, stipulate, acknowledge, and agree that the Prepetition Liens in the Prepetition Collateral were granted to the Agent for the benefit of Agent and the Prepetition Lenders for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of the loans and financial accommodations secured thereby.

9.    Pursuant to that certain Intercreditor Agreement dated as of September 19, 2008, (as at any time amended, restated, modified, or supplemented, the "Intercreditor Agreement"), the parties set forth the relative priorities among to the Debtors' property and assets, including, without limitation, the Prepetition Collateral.

10.    All cash of the Debtors wherever located on the Petition Date represents either proceeds of loans from the Prepetition Lenders or proceeds of the Prepetition Collateral. Pursuant to the Prepetition Loan Documents and section 552(b) of the Bankruptcy Code, the Debtors represent, stipulate, acknowledge, and agree that the Agent on behalf of the Prepetition Lenders has a valid, duly perfected, first-priority lien upon and security interest in and to all of

the cash of the Debtors, and these funds, along with the proceeds of the Prepetition Collateral, constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code.

**B.     Need for Use of Cash Collateral and Agreement of Prepetition Lenders**

1.     An immediate and critical need exists for the Debtors to be permitted access to funds in order to prevent a disorderly termination or disruption of the Debtors' business.     The cash collateral use arrangement agreed to hereunder is vital to avoid immediate and irreparable harm to the Debtors' estates.  Absent such use, the Debtors' estates will not have funds sufficient to satisfy their obligations.  Allowing the use of such cash collateral therefore is in the best interest of the Debtors' estates and will serve to preserve the value of the estates. As such, good cause has been shown for the entry of an Interim Order authorizing Debtors' use of the Cash Collateral (as that term is defined herein).

2.     The Agent and the Prepetition Lenders consent to the Debtors' limited, interim use of Cash Collateral (as hereinafter defined), only in accordance with the terms and provisions of the Agreed Interim Order (to avoid immediate and irreparable harm to the Debtors' estates), which Interim Order (attached hereto as Exhibit "A") assures that the Adequate Protection Liens (as hereinafter defined) and the various claims, super priority claims, and other protections granted herein, including the Adequate Protection Payments (as shown on the attached Budget, Exhibit "B", or as hereinafter defined), will not be affected by any subsequent reversal or modification of this Interim Order, in the same manner as provided in section 364(e) of the Bankruptcy Code, which is agreed to by the Debtors and which is made applicable to the cash collateral use arrangement contemplated by the Interim Order.

3.     Pursuant to the Bankruptcy Code and in light of the foregoing, the Debtors are required and have agreed to provide adequate protection to each of the Agent and the Prepetition Lenders in respect of the Debtors' use of their collateral, as is contemplated by the Budget attached to this Motion as Exhibit "B".

4.     The Debtors' have an emergency and pressing need for the use of the Cash Collateral of the Pre-Petition Lenders. The Debtors require use of the Cash Collateral to be able to pay costs of ongoing operations, to pay lease operating expenses on producing wells, to satisfy payroll and employee benefits, to pay severance taxes, and to pay vendors to ensure a continued supply of services and materials essential to the Debtors' continued viability. Cash Collateral will not be used for any capital expenditures, including, without limitation, drilling, payments for seismic or payments to extend or renew leases without the specific consent of the Pre-Petition Lenders on a item by item basis. If unable to use the Cash Collateral, the Debtors would be unable to operate their business and maintain the value of the assets.

5.     During the four (4) weeks ending November 21, 2009, the Debtors will receive approximately $297,447 in oil and gas receipts net of royalty payments. From those amounts, Debtors propose to pay severance taxes which are estimated at $15,405. Debtors propose to pay $233,533 in post-petition lease operating expenses, which are necessary in order to continue to receive oil and gas receipts. Employment expenses are estimated to be approximately $105,880 over the same four-week period.

6.     Even without expenditures for capital expenses, the Debtors still will experience a significant need for additional financing to continue to operate and accomplish a sale of its assets or other plan for its reorganization. Thus, Debtors expect to file a Motion for Authority to Enter

Into Post-Petition Lending (the "DIP") with a lender or lenders with whom Debtor at this time and for some time pre-petition has been engaged in discussions. The proposed DIP Lender also is expected to make a bid on some of Debtors assets. As soon as those discussions are complete and the Debtors are ready to file a Motion one will be filed. The Pre-petition Lenders are actively engaged in those discussions with Debtors and the proposed DIP Lender / Purchaser.

7.　　Bankruptcy Code section 363(c)(2) provides that the Debtors may not use, sell, or lease cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). Bankruptcy Code section 363(e) provides that upon request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as necessary to provide adequate protection of such interest.

8.　　Accordingly, based upon the foregoing, the Debtors respectfully request that the Court authorize the Debtors to use the cash collateral in accordance with the terms set forth in the Interim Order.

9.　　The Pre-Petition Lenders have consented to the use of cash collateral upon the terms and conditions of the Agreed Order attached to this Motion as Exhibit "A" and the Budget attached to this Motion as Exhibit "B". Therefore, the Court should authorize use of cash collateral because the Pre-Petition Lenders have consented to same and should grant such use pursuant to the terms of the attached proposed Agreed Order.

10.　　The courts in the Western District of Texas have previously granted the relief requested by the Debtors under section 363 in other cases even without consent of parties in the

position of the Prepetition Lenders. *See In re Spectrum Jungle Labs Corp.*, Case No. 09-50455-rbk (Bankr. W.D. Tex (San Antonio) March 5, 2009) (Docket No. 229); *In re Physicians Specialty of El Paso East, L.P.,* Case No. 07-30633-lmc (Bankr. W.D. Tex. (El Paso) Oct. 24, 2007) (Docket No. 238), *In re Lothian Oil Inc.,* Case No. 07-70121-rbk (Bankr. W.D. Tex (Midland) July 17, 2007) (Docket No. 176), *In re Gourmet Express, LLC*, Case No. 07- 52143-rbk (Bankr. W.D. Tex. (San Antonio) August 30, 2007) (Docket No. 41).

**C.  Approval of Adequate Protection**

1.  Because the Pre-Petition Lenders have agreed to the use of cash collateral and have requested certain protections as part of the agreement memorialized in the proposed Agreed Order and as shown in the Budget, and because the assets are depleting and/or depreciating assets by their nature, the Pre-Petition Lenders are entitled to request adequate protection. Debtors and the Pre-Petition Lenders believe that the terms for adequate protection set forth in the proposed Agreed Order are adequate under all of the facts and circumstances of the case. Under Bankruptcy Code section 361, when adequate protection is required under Bankruptcy Code section 363 to protect against any diminution in value of an interest of an entity in property, a debtor may provide additional or replacement liens to the prepetition secured creditor. 11 U.S.C. § 361(2). The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor),* 808 F.2d 1393, 1396-1397 (10th Cir. 1987); *In re Martin,* 761 F.2d 472, 474 (8th Cir. 1985); *Shaw Indus., Inc. v. First Nat'l Bank of Pa. (In re Shaw Indus.)*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). Adequate protection can be provided in a number of ways (*see e.g.*, 11 U.S.C. §361), with the focus being to protect a secured creditor from diminution in the value of its interest in

the collateral during the period of use. *See In re 495 Cent. Park Ave. Corp.,* 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992)(purpose of adequate protection is "to safeguard the secured creditor from diminution in the value of its interest" during the Chapter 11 reorganization); *In re Kain,* 86 B.R. 506, 513 (Bankr. W.D. Mich 1988).

2. In exchange for the Debtors' use of the cash collateral, the Debtors have offered to grant adequate protection to the Pre-Petition Lenders in the form set forth in the attached proposed Agreed Order, including the modification of the Automatic Stay (11 USC § 362).

3. To the extent that Pre-Petition Lenders are not able to recover the full amount of their claim, and to the extent that the value of the Prepetition Collateral is diminished by the use of cash collateral, the proposed Agreed Order also grants the Pre-Petition Lenders additional adequate protection in the form of a super priority claim. This protection *may* be modified by the terms of any debtor in possession financing obtained by the Debtors, which is anticipated to be with full agreement by the Pre-Petition Lenders. Thus, any liens or other protections for the Pre-Petition Lenders contemplated and granted by the attached proposed Agreed Order could be modified by the terms of a DIP Loan to be requested by Debtors in the near future.

4. As the Pre-Petition Lenders in all likelihood are not fully secured, much less, have an equity cushion, and as the Debtors' use of cash collateral is likely to result in a diminution in the value of the Prepetition Collateral, in addition to the adequate protection offered the proposed Agreed Order, the Pre-Petition Lenders are also being granted replacement liens on all assets of the Debtors.

5. The granting of adequate protection of this type under section 361 has previously

been approved by courts in the Western District of Texas in similar cases. *See In re Spectrum Jungle Labs Corp.*, Case No. 09-50455-rbk (Bankr. W.D. Tex (San Antonio) March 5, 2009) (Docket No. 229); *In re Physicians Specialty of El Paso East, L.P.,* Case No. 07-30633-lmc (Bankr. W.D. Tex. (El Paso) Oct. 24, 2007) (Docket No. 238).

## IV. NOTICE

### A. Notice With Respect to Interim Cash Collateral

Notice of this Motion has been given by facsimile or overnight delivery to the following parties, or in lieu thereof, to their counsel: (i) the Pre-Petition Lenders and their counsel; (ii) office of the United States Trustee for the Western District of Texas, by copies to both the San Antonio office and the Austin Office; (iii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, including the Petitioning Creditors in the Involuntary Case filed against STO Operating in the Austin Division of the Western District on September 11, 2009; (iv) certain governmental entities, counsel and parties-in-interest. The Debtors submit that under the circumstances, no further notice of the hearing on the interim financing is necessary and request that any further notice be dispensed with and waived.

### B. Notice With Respect to Final Cash Collateral

The Debtors respectfully request that the Court set a final hearing date (the "Final Hearing") on the Motion for November _____ , 2009 at _____ ___.m. (Central Time) and authorize the Debtors to serve a copy of this Motion and any interim order which fixes the time and date for filing objections to this Motion, by first class mail upon (i) counsel to any official committee of unsecured creditors appointed in these cases; (ii) the Office to the United States Trustee; (iii)

all parties who have filed requests for notice under Bankruptcy Rule 2002; (iv) the thirty (30) largest unsecured creditors (on a consolidated basis) of the Debtors at their last known addresses; (v) the Pre-Petition Lenders and their counsel; (vi) all parties who have asserted liens on assets of the Debtors; and (vii) all other parties ordered by the Court. The Debtors request that the Court deem such notice of the final hearing to be sufficient notice under Bankruptcy Rule 4001.

**C.**       **Adequate Notice; Notice of Final Hearing.**

Debtors have given Notice of the Interim Hearing in accordance with Bankruptcy Rules 2002 and 4001 and the local rules of the Court. Under the circumstances, no further notice of the request for relief granted at the Interim Hearing is required. Debtors request and propose that Debtors, within two (2) business days of the entry of the Interim Order, serve, by first class mail or electronic mail, a copy of the Interim Order and a notice of the Final Hearing (the "Final Hearing Notice"), to all parties set forth in paragraph IV. B. above, and that Debtors shall file a certificate of service regarding same with the Clerk of the Court and that such evidence shall constitute good and sufficient notice of the Final Hearing.

**D.**    **Objection Deadline.**

Debtors request that the Court provide that the Final Hearing Notice state that any party-in-interest objecting to the relief sought at the Final Hearing shall make such objection in writing setting forth with particularity all facts relied upon and all grounds therefor, and shall be filed with the Court on or before November ___ , 2009 not later than 4:00 p.m. (Central time) (the "Objection Deadline"), and concurrently served so as to be *actually received* by the Objection Deadline by the following parties: counsel for the Debtors, Ronald Hornberger, Plunkett &

Gibson, Inc., Suite 1100, Renaissance Tower, San Antonio, Texas, and David S. Gragg, Langley & Banack, Inc., Suite 900, Trinity Plaza II, 745 East Mulberry, San Antonio, TX 78212-3166 ; counsel for the Agent, Katten Muchin Rosenman LLP, 525 West Monroe Street, Chicago, Illinois 60661, Attn: John P. Sieger and Oppenheimer, Blend, Harrison and Tate, Inc., 711 Navarro, Suite 600, San Antonio, Texas 78205 Attn: Raymond W. Battaglia; counsel for Glenrose Holdings, LLC, David S. Elder, Gardere Wynne Sewell LLP, 1000 Louisiana, Suite 3400, Houston, Texas 77002-5011; and, the U.S. Trustee, United States Trustee, Western District of Texas, San Antonio Office, 615 E. Houston Street, Suite 533, San Antonio, TX 78205, Attention: Nancy Ratchford, Assistant US Trustee. Debtors request that the Court Order that unless an objecting party (or its counsel) appears at the Final Hearing to assert the basis for such timely filed objection, such objection shall be deemed to have been waived and abandoned by such objecting party.

## PRAYER

WHEREFORE, the Debtors respectfully request that the Court enter an Order (a) authorizing, on an interim basis, the Debtors' to use cash collateral , (b) scheduling the Final Hearing on this Motion for approval of the use of cash collateral under the terms agreed to by the Debtors and the Prepetition Lenders pursuant to the proposed Agreed Interim Order; (c) authorizing, on a final basis, the Debtors' to use cash collateral under and pursuant to the terms agreed to between the Debtors and the Prepetition Lenders; and (d) for such other and further relief to which the Debtors may be justly entitled.

Dated: October 29, 2009

Respectfully submitted,

| | AND |
|---|---|
| RONALD HORNBERGER<br>PLUNKETT & GIBSON, INC.<br>Renaissance Plaza, Suite 1100<br>70 NE Loop 410<br>San Antonio, TX 78216<br>Telephone: (210) 734-7902<br>Telecopier: (210) 734-0379<br>E-mail: hornbergerr@plunkett-gibson.com | DAVID S. GRAGG<br>LANGLEY & BANACK, INCORPORATED<br>Suite 900, Trinity Plaza II<br>745 East Mulberry<br>San Antonio, TX 78212-3166<br>Telephone: (210)-736-6600<br>Fax: (210) 735-6889<br>E-mail: dgragg@langleybanack.com |

By:  **/s/Ronald Hornberger**
RONALD HORNBERGER
Texas Bar No. 10004000
DAVID S. GRAGG
Texas Bar No. 08253300

**PROPOSED ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION**

**CERTIFICATE OF CONFERENCE**

I hereby certify that, on October 29, 2009, counsel for Debtors conferred with counsel to the Pre-Petition Lenders and with the United States Trustee regarding the *Emergency Motion for Interim and Final Orders Pursuant to 11 U.S.C. Sections 105, 362, 363, and 507 and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 and Granting Interim and Final Use of Cash Collateral and Granting Adequate Protection ; and Scheduling a Final Hearing on the Motion.*

**/s/Ronald Hornberger**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Emergency Motion for Interim and Final Orders Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, and 507 and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (I) Authorizing the Debtors to Incur Postpetition Senior Secured Superpriority Indebtedness; (II) Authorizing Use of Cash Collateral; (III) Granting Security Interests and Superpriority Claims and Granting Adequate Protection; (IV) Scheduling a Final Hearing on the Motion* was forwarded via United States Mail, postage prepaid, on the 29th day of October, 2009, to all parties listed shown on the attached Service List and by electronic mail to those ECF participants, and via fax transmission and e-mail to:

**Attorney for Petitioning Creditors:**

Kenneth P. Green
Snow, Fogel, Spence LLP
2929 Allen Parkway, Suite 4100
Houston, TX 77019
E-Mail: kennethgreen@snowfogel.com
Fax: (713) 335-4848

**Attorney for Agent:**

John Sieger
Katten, Muchin, Rosenman LLP
525 W. Monroe Street / Chicago, IL 60661-3693
E-Mail: john.sieger@kattenlaw.com
Fax: (312) 577-8681

**United States Trustee:**

United States Trustee
Attention: Nancy Ratchford, Assistant US Trustee
Western District of Texas
615 E. Houston Street, Suite 533
San Antonio, TX 78205
E-Mail: Nancy.Ratchford@usdoj.gov
Fax: (210) 472-4649

**/s/Ronald Hornberger** _____

## SERVICE LIST

### *All Debtors, Care of :*

Mike Pawelek
STO Oil Company
300 E. Sonterra Blvd.
Ste 1220
San Antonio, TX  78258

### *Petitioning Creditor*

Schlumberger Technology Corp.
Attention: James M. Sczudlo
1325 S. Dairy Ashford
Houston, TX  77077

### *Petitioning Creditor*

Spirit Completion Fluids, Ltd.
Attn: Robert Helm, GP
800 N. Shoreline Blvd. #900 S
Corpus Christi, TX  78401

### *Petitioning Creditor*

Baker Hughes Oilfield Operations, Inc.
Attn: Christopher J. Ryan
P.O. Box 4740
Houston, TX  77210

### *Attorney for Petitioning Creditors*

Kenneth P. Green
Snow Fogel Spence LLP
2929 Allen Parkway, Suite 4100
Houston, TX  77019
E-Mail:  kennethgreen@snowfogel.com
Fax:  (713) 335-4848

### *Counsel for the Agent*

Katten Muchin Rosenman LLP
Attn:  John P. Sieger
525 West Monroe Street
Chicago, IL  60661
E-Mail:  john.sieger@kattenlaw.com
Fax:  (312) 577-8681

### *Local Counsel for the Agent*

Oppenheimer, Blend, Harrison
 and Tate, Inc.
Attn: Raymond W. Battaglia
711 Navarro, Suite 600
San Antonio, TX  78205

United States Trustee
Attention: Nancy Ratchford
Assistant US Trustee W.D. of Texas
615 E. Houston Street, Suite 533
San Antonio, TX  78205
E-Mail:  Nancy.Ratchford@usdoj.gov
Fax:  (210) 472-4649

### *Combined List of 30 Largest Unsecured Creditors:*

Zeltwanger, William
P.O. Box 214
Round Top, TX  78954

Jaehne, Bennie C.
P.O. Box 726
Giddings, TX  78942

Jaehne, Mark A.
P.O. Box 726
Giddings, TX  78942

Spirit Drilling Fluids
12941 North Frwy., Suite400
Houston, TX  77060

Hercules Drilling Operations Dept. 313
P.O. Box 4346
Houston, TX  772104346

Brown Water Marine Service, Inc.
P.O. Box 2269
Rockport, TX  78381

Baker Oil Tools
P.O. Box 200415
Houston, TX  77216

The Longview Fund, L.P.
Attn:  George
600 Montgomery St., 44th Floor
San Francisco, CA  94111

Thompson & Knight LLP
333 Clay Street, Suite 3300
Houston, TX  770024499

Halliburton
P.O. Box 203143
Houston, TX  772163143

Spirit Completion Fluids, Ltd.
12941 North Frwy, Suite 400
Houston, TX  77060

FESCO, Ltd.
1000 Fesco Ave.
Alice, TX  78332

Padre Tubular, Inc.
P.O. Box 189
Corpus Christi, TX  78403

Lewis, James
3552 8th Ave NW
Hackensack, MN  56452

Baker & McKenzie
Attn:  Jason Murray
Pennzoil Place, South Tower
711 Louisiana, Suite 3400
Houston, TX  770022746

Midstream Fuel Service LLC
P.O. Box 3093
Houston, TX  77253

Schlumberger Technology Corporation
P.O. Box 201193
Houston, TX  772161193

Arbol Resources, Inc.
10777 Westheimer, #1125
Houston, TX  770423460

Supreme Services
204 Industrial Ave C
Houma, LA  70363

Davisdson, Donald E.
568 Keene Avenue
Wayzata, MN  55391

Maloney, Wayne
2282  230th ST
Truman, MN  56088:

STRATA Directional Technology, Inc.
P.O. Box 200807
Dallas, TX  753200807

Christi, Texas 78471
Millennium Pipeline, LLC
P.O. Box 1686
Larose, LA  70373

Kodiak Pipe Rental, Inc.
P.O. Box 53202
Lafayette, LA  70505

Mi Swaco
P.O. Box 200132
Dallas, TX  753200132

Cinco Natural Resources Corporation
2626 Howell St, Suite 800
Dallas, TX  75204

Smith
P.O. Box 200760
Dallas, TX 753200760

Allis-Chalmer Tublar Services, LLC
P.O. Box 201235
Dallas, TX 752301235

Belhe, Kedar R.
1601 Hill Ridge Terrace
Minnetonka, MN 55305

Allis-Chalmers Productions Services, LLC
P.O. Box 201686
Dallas, TX 75320

Longview Marquis Master Fund, L.P.
c/o Summerline Asset Management, LLC
70 West Red Oak Lane, 4th Flr
White Plains, NY 10604

Summerview Marquis Fund, L.P.
c/o Summerline Asset Management, LLC
70 West Red Oak Lane, 4th Flr
White Plains, NY 10604

Ford Credit
P.O. Box 650575
Dallas, TX 752650575

### *County Taxing Authorities*:

Atascosa County Tax Office
Barbara Schorsch, RTA
1001 Oak St.
Jourdanton, TX 78026

Bastrop County
Linda Harmon
Tax Assessor/Collector
P.O. Box 579
Bastrop, TX 78602

Brazos County Kristeen Roe
Tax Assessor- Collector
300 E. William Joel Bryan Parkway
Bryan, TX 77803-5397

Burleson County Tax Office
Curtis Doss Tax Assessor/Collector
100 W Buck St. Suite 202
Caldwell, TX 77836

Calhoun County Appraisal District
Phillip E. Gonzales
P.O. Box 49, 426 W Main
Port Lavaca, TX 77979-0049

Charlotte I.S.D.
Zoraida R. Casares
P.O. Box 366
Charlotte, TX 78011

Fayette County Tax Appraisal District
Karen Schubert
P.O. Box 836
La Grange, TX 78945

Frio County Clerk
Frio County Tax A/C: Anna L Alaniz
500 E San Antonio St
Box #20
Pearsall, TX 78061

Gonzalez, Irma
Frio Co Appr Dist
P.O. Box 1129
Pearsall, TX 78061-1129

Jackson, Virginia A., RTA
Lee County Tax Assessor and Collector
170 East Industry
Giddings, TX 78942

Neuman, Loraine, RTA, CTA
Median County Tax Assessor-Collector
1102 15th St.
Hondo, TX 78861

Romo, Sylvia S., CPA, RTA, CTA
Bexar County Tax Assessor-Collector
P.O. Box 839950
San Antonio, TX  78283-3950

Secretary of State of Nevada
202 North Carson St
Carson City, NV  89701-4201

Spears, Nelda Wells
Travis Cnty Tax Assessor - Col
5501 Airport Blvd
P.O. Box 149326
Austin, TX  78714-9326

Tax Assessor-Collector
Norma Jean Dubose
P.O. Box 677
Gonzales, TX  78629

### Internal Revenue Service:

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA  19114

Internal Revenue Service
Special Procedures Branch
300 E. 8th Street
Austin, TX  78701

United States Treasury
P.O. Box 9941
Mail Stop 6734
Ogden, UT  84409

### Texas Comptroller:

State Comptroller
Texas Comptroller of Public Accounts
P.O. Box 149348
Austin, TX  78714-9348

### Texas Attorney General:

Ryan, Abigail R.
Assistant Attorney General
Bankruptcy & Collections Division
P.O. Box 12548
Austin, TX  78711-2548

### The Texas Railroad Commission:

Railroad Commission of Texas
P.O. Box 12967
Austin, TX  78711-2967

### Lienholders:

Altec, Inc.
619 East Second Street
Broussard, LA  70518

Baker Oil Tools
P.O. Box 200415
Houston, TX  77216

Brown Water Marine Service, Inc.
P.O. Box 2269
Rockport, TX  78381

FESCO, Ltd.
1000 Fesco Ave.
Alice, TX  78332

Hercules Drilling Operations
Dept. 313
P.O. Box 4346
Houston, TX  77210-4346

Roywell Services, Inc.
P.O. Box 1329
Bellaire, TX  77402-1329

Schlumberger Technology Corporation
P.O. Box 201193
Houston, TX  77216-1193

Smith
P.O. Box 200760
Dallas, TX 75320-0760

TNT Crane & Rigging, Inc.
P.O. Box 203708
Houston, TX 77216-3708

Wood Group Wireline Services
P.O. Box 200240
Houston, TX 77216-0240

Wood Group Logging Services
P.O. Box 201507
Houston, TX 772160-1507

Pioneer Well Services LLC
P.O. Box 202563
Dallas, TX 75320-2563

Viking Asset Magagement, L.P.
600 Montgomery St., 44th Floor
San Francisco, CA 94111

Granite Energy
2580 Anthem Village Drive
Henderson, NV 89052

CD Kirchner
Texana Drilling LLC
118 Highway 87N
Comfort, TX 78013

Hillcrest Commercial Leasing
P.O. Box 415033
Kansas City, MO 64141-5033

Granite Energy
2580 Anthem Village Drive
Henderson, NV 89052

Summerline Asset Management, LLC
70 West Red Oak Lane, 4th Flr.
White Plains, NY 10604

*Parties Requesting Notice*
*in Involuntary Case*:

Carl Doré
Doré & Associates, Attorneys, PC
17171 Park Row, Suite 350
Houston, TX 77084

Nathaniel Peter Holzer
Jordan, Hyden, Womble,
Culbreth & Holzer, PC
500 N. Shoreline, Suite 900
Corpus Christi, TX 78741

John T. Tesser IV
Joshua W. Wolfshohl
Porter & Hedges, LLP
1000 Main Street, 36th Floor
Houston, TX 77002

Thomas S. Henderson
Attorney at Law
711 Louisiana, Suite 3100
Houston, TX 77002-2716

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | Chapter 11 |
| SOUTH TEXAS OIL COMPANY, et al.[1] | § | |
| | § | Case No. 09-54233 |
| Debtors. | § | |
| | § | (Joint Administration Requested) |
| | § | |

**INTERIM ORDER (A) AUTHORIZING CERTAIN OF THE DEBTORS TO (I) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (II) PROVIDE ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND (B) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

Upon the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (the "Debtors") for entry of an interim order (this "Interim Order") and a final order (if any, the "Final Order"): (a) authorizing the Debtors to use cash collateral that secures obligations of the Debtors owing to the Prepetition Lenders (as defined below) pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy

---

[1] The debtors in these chapter 11 cases are South Texas Oil Company, Southern Texas Oil Company, STO Operating Company, STO Properties LLC and STO Drilling Company.



Code") subject to the terms and conditions set forth herein; (b) providing adequate protection to the Prepetition Lenders, pursuant to sections 361, 362, and 363 of the Bankruptcy Code, as more fully set forth herein; (c) scheduling and approving the form and method of notice for a final hearing pursuant to Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (d) granting related relief; and the Court having reviewed the Motion and all matters brought to the Court's attention at the preliminary hearing, which was held on November ___, 2009, pursuant to Bankruptcy Rule 4001 (the "Interim Hearing"); and it appearing that the relief requested in the Motion (as modified on the record of the Interim Hearing), to the extent granted by this Interim Order, is in the best interests of the Debtors, their estates, and their creditors; and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

**THE COURT HEREBY FINDS AND DETERMINES:**

A.     On _____, 2009 (the "Petition Date"), the Debtors filed their respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (collectively, these "Chapter 11 Cases").

B.     The Debtors have retained possession of their property and continue to operate and manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, official committee of unsecured creditors, or any other committee (each, a "Committee") has been appointed in these Chapter 11 Cases.

C.     The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant

to 28 U.S.C. § 157(b)(2). Venue for these Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     The Interim Hearing was held pursuant to Bankruptcy Rule 4001 and the local rules. Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery, on November ___, 2009, to certain parties in interest, including: (i) the United States Trustee for the Western District of Texas (the "U.S. Trustee"); (ii) the Internal Revenue Service; (iii) the Securities and Exchange Commission; (iv) the creditors holding the twenty (20) largest unsecured claims against the Debtors' estates; (v) the Agent (as defined below) and its counsel; and (vi) all secured creditors of record. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion is due and sufficient notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c) and 4001(d), and the local rules of the Court, and no other notice need be given.

E.     Prior to the Petition Date, The Longview Fund, L.P. ("Longview") and Longview Marquis Master Fund, L.P. ("Marquis") made certain loans and other financial accommodations available to South Texas Oil Company (the "Borrower") pursuant to certain senior notes (as amended, restated, supplemented, or otherwise modified from time to time, the "Initial Notes") issued in connection with that certain Securities Purchase Agreement dated April 1, 2008, between the Borrower, Longview and Marquis and together with all instruments, agreements, and documents related thereto or executed in connection therewith (collectively, as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "Initial Loan Documents"). Pursuant to the Initial Loan Documents, Longview and Marquis agreed to provide Borrower with a credit facility of $32,500,000.

3

F.     Pursuant to that certain Securities Purchase Agreement dated September 19, 2008, between Borrower and Marquis, Borrower issued to Marquis a senior note (as amended, restated, supplemented, or otherwise modified from time to time, the "Bridge Note") in an original principal amount of $7,000,000 and together with all instruments, agreements, and documents related thereto or executed in connection therewith (collectively, as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "Bridge Loan Documents" and together with the Initial Loan Documents, the "Prepetition Documents").

G.     On May 18, 2009, the Borrower completed a debt restructuring with Longview after which the Borrower had no remaining note payable or related accrued interest payable balances with Longview under the Initial Loan Documents.

H.     On May 29, 2009, Marquis provided the Borrower with notice that Marquis had transferred approximately 25% of each of the Initial Notes and Bridge Note it held, along with certain other rights and interests, to Summerview Marquis Fund, L.P. ("Summerview" and together with Marquis, the "Prepetition Lenders").

I.     The Debtors represent, stipulate, acknowledge, and agree that as of the Petition Date, the Borrower was indebted to the Prepetition Lenders under the Initial Loan Documents in the approximate aggregate principal amount of $9,673,504 and under the Bridge Loan Documents in the approximate aggregate principal amount of $7,554,868 (such principal amounts, together with all interest, fees, costs, expenses (including, without limitation, attorneys', accountants' and financial advisors' fees), and other amounts heretofore or hereafter accruing thereon or at any time chargeable to the Borrower in connection with the Prepetition Loan Documents, is collectively referred to herein as, the "Prepetition Indebtedness").

J.      The Debtors rep resent, stipulate, acknowledge, and agree that the Prepetition Indebtedness is (i) legal, valid, binding, and enforceable against the Borrower; and (ii) not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack, or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, equity, or otherwise.

K.      In connection with the execution of the Prepetition Loan Documents, Southern Texas Oil Company, STO Operating Company, STO Properties LLC and STO Drilling Company (collectively, the "Guarantors") provided a guaranty of the Borrower's full and prompt payment of its indebtedness, liabilities, and obligations to the Prepetition Lenders.  In connection therewith, each of the Guarantors executed that certain Guaranty dated as of April 1, 2008 and that certain Guaranty dated September 19, 2008 (collectively, as the same may be amended, restated, supplemented, or otherwise modified, the "Guaranties") in favor of Summerline Asset Management, LLC, as agent (as successor in interest via assignment from Viking Asset Management, LLC solely in its capacity as collateral agent, the "Agent"), for the benefit of itself and the Prepetition Lenders.  By execution of this Interim Order, each of the Guarantors hereby (i) reaffirms, ratifies, and confirms that the Guaranties, and the Guarantors' obligations thereunder, remain in full force and effect notwithstanding, among other things, any financial accommodations extended by the Prepetition Lenders to any of the Debtors pursuant to the terms of this Interim Order; (ii) denies and waives the existence of any defenses or right of setoff which may otherwise be available to the Guarantors relating to the Guaranties; and (iii) waives and releases any and all of the Guarantors' claims, counterclaims, and causes of action that may exist under the Guaranties against the Prepetition Lenders.

L. As security for the payment of the Prepetition Indebtedness, the Debtors represent, stipulate, acknowledge, and agree that the Debtors granted to the Agent for the benefit of the Prepetition Lenders, pursuant to, *inter alia*, the Amended and Restated Security Agreement dated April 1, 2008, Security Agreement dated September 19, 2008, Mortgages dated April 1, 2008, Mortgages dated September 19, 2008, Pledge Agreement dated April 1, 2008, and Pledge Agreement dated September 19, 2008, in each case, as the same is amended, restated, supplemented, or otherwise modified from time to time, security interests in and liens upon all of the Debtors' property and assets as more fully described in the Prepetition Loan Documents (all such property, as the same existed on or at any time prior to the Petition Date, together with all cash and non-cash proceeds thereof, being hereinafter referred to as, the "Prepetition Collateral" and such liens thereon shall be referred to as the "Prepetition Liens").

M. The Debtors rep resent, stipulate, acknowledge, and agree that the Prepetition Liens are legal, valid, enforceable, non-avoidable, and duly perfected security interests in and liens upon the Prepetition Collateral and, as of the Petition Date, and without giving effect to this Interim Order, the Debtors are not aware of any liens or security interests having priority over the Prepetition Liens, except certain "Permitted Liens" (as defined in the Prepetition Loan Documents) to the extent such Permitted Liens are legal, valid, enforceable, non-avoidable, duly perfected, and have priority pursuant to applicable non-bankruptcy law. The Debtors further represent, stipulate, acknowledge, and agree that the Prepetition Liens in the Prepetition Collateral were granted to the Agent for the benefit of agent and the Prepetition Lenders for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of the loans and financial accommodations secured thereby.

N.     Pursuant to that certain Intercreditor Agreement dated as of September 19, 2008, (as at any time amended, restated, modified, or supplemented, the "Intercreditor Agreement"), the parties set forth the relative priorities among to the Debtors' property and assets, including, without limitation, the Prepetition Collateral.

O.     All cash of the Debtors wherever located on the Petition Date represents either proceeds of loans from the Prepetition Lenders or proceeds of the Prepetition Collateral. Pursuant to the Prepetition Loan Documents and section 552(b) of the Bankruptcy Code, the Debtors represent, stipulate, acknowledge, and agree that the Agent on behalf of the Prepetition Lenders has a valid, duly perfected, first-priority lien upon and security interest in and to all of the cash of the Debtors, and these funds, along with the proceeds of the Prepetition Collateral, constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code.

P.     An immediate and critical need exists for the Debtors to be permitted access to funds in order to prevent a disorderly termination or disruption of the Debtors' business. Good cause has been shown for the entry of this Interim Order. The cash collateral use arrangement authorized hereunder is vital to avoid immediate and irreparable harm to the Debtors' estates. Absent such use, the Debtors' estates will not have funds sufficient to satisfy their obligations. Allowing the use of such cash collateral therefore is in the best interest of the Debtors' estates.

Q.     The Agent and the Prepetition Lenders consent to the Debtors' limited, interim use of Cash Collateral (as hereinafter defined), only in accordance with the terms and provisions of this Interim Order (to avoid immediate and irreparable harm to the Debtors' estates) – which Interim Order assures that the Adequate Protection Liens (as hereinafter defined) and the various claims, superpriority claims, and other protections granted herein, including the Adequate Protection Payments (as hereinafter defined), will not be affected by any subsequent reversal or

modification of this Interim Order, in the same manner as provided in section 364(e) of the Bankruptcy Code, which is hereby made applicable to the cash collateral use arrangement contemplated by this Interim Order.

R.    Pursuant to the Bankruptcy Code and in light of the foregoing, the Debtors are required and shall provide adequate protection to each of the Agent and the Prepetition Lenders in respect of the Debtors' use of their collateral.

**NOW THEREFORE, IT IS HEREBY AGREED AND ORDERED THAT:**

1.    **Disposition**.  The Motion is hereby granted on an interim basis to the extent and subject to the terms set forth herein with the foregoing findings incorporated herein by reference, and the Debtors and the Agent consent and stipulate thereto.  Any objections to the Motion and/or entry of this Interim Order that have not previously been withdrawn or resolved are hereby overruled.  This Interim Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket for these Chapter 11 Cases.

2.    **Use of Cash Collateral**.  The Debtors are hereby authorized to use Cash Collateral (as hereinafter defined) and to perform their obligations hereunder and under the Prepetition Loan Documents in accordance with, and subject to, the terms of this Interim Order and the budget (the "Budget").  The Budget is attached hereto as **Exhibit A** and incorporated herein by this reference.  Neither the failure of the Agent to object to the Budget nor the consent or agreement of the Agent to the Budget shall constitute an admission, nor shall it be deemed an admission that any such budgeted expenses constitute reasonable, necessary costs and expenses of preserving or disposing of the Prepetition Collateral.  Notwithstanding any relief granted in any other order entered by the Court, but subject to the terms and conditions of this Interim

8

Order, the Debtors shall not make any expenditures authorized by such orders unless, and to the extent that, such expenditures are encompassed and expressly included in this Interim Order and the Budget. The Prepetition Loan Documents are hereby ratified, affirmed, and incorporated herein by this reference, and the Debtors shall perform all of their obligations thereunder, except to the extent such loan documents are modified by the terms of this Interim Order.

3. **Remittance of Cash Collateral.** From and after the date of entry of this Interim Order until the indefeasible payment in full in cash of the Prepetition Indebtedness, the Debtors shall deposit on a daily basis, all cash, cash equivalents, and Cash Collateral (as defined in section 363(a) of the Bankruptcy Code) in their possession or control arising from or constituting proceeds of the Prepetition Collateral or the proceeds of loans from the Prepetition Lenders to the Debtors (collectively, the "Cash Collateral") in one or more existing blocked accounts subject to a Deposit Account Control Agreement (as defined in the Prepetition Loan Documents) (the "Accounts"). The Agent shall have the right to direct the Banks (as defined in the Prepetition Loan Documents) to immediately transfer all funds paid into the Accounts into an account designated by the Agent (the "Concentration Account"). Upon receipt and provided no Termination Event (as hereinafter defined) has occurred hereunder, the Debtors may request such amounts from the Agent which are necessary to pay the line-item amounts set forth in the Budget in such amounts and at the times set forth therein. The Agent shall be reimbursed for all normal fees and charges and shall be entitled to deduct such fees and charges from such funds without further order of this Court. Upon application thereof, such fees shall be deemed fully earned, indefeasibly paid, and non-refundable. All monies collected by the Debtors shall be held in trust for the exclusive benefit of the Agent and the Prepetition Lenders whether or not such monies are actually remitted to the Accounts.

4. **Receipt of Payments and Proceeds**. Any and all payments or proceeds remitted, or deemed to be remitted, to the Agent or the Prepetition Lenders pursuant to the Budget or otherwise, shall be received, or deemed received, by the Agent or the Prepetition Lenders entirely free and clear of any claim, charge, assessment, or other liability including, without limitation, any such claim or charge arising out of or based on section 552(b) of the Bankruptcy Code, whether directly or indirectly, all of which are hereby waived by the Debtors. Any and all amounts paid to the Agent or the Prepetition Lenders otherwise received by the Agent or the Prepetition Lenders (either prior to, on, or following the Petition Date) shall be applied to the Prepetition Indebtedness in the manner set forth in the Prepetition Loan Documents. Upon application thereof, such amounts shall be deemed indefeasibly paid and non-refundable.

5. **Replacement Liens**. As further adequate protection for the Agent's and the Prepetition Lenders' interests in and to the Prepetition Collateral, including adequate protection against the diminution of the value of the Prepetition Collateral and the Cash Collateral (including use of Cash Collateral to preserve or dispose of assets of the Debtors that do not constitute Prepetition Collateral) resulting from the imposition of the stay arising under section 362 of the Bankruptcy Code, or resulting from the pendency of these Chapter 11 Cases, the Agent on behalf of the Prepetition Lenders is hereby granted valid, binding, enforceable, and duly perfected security interests in and liens (with such replacement liens having the same extent and priority as the Prepetition Liens immediately preceding the Petition Date), upon all of the Prepetition Collateral and all currently owned or hereafter acquired property and assets of the Debtors of any kind or nature, whether real or personal, tangible or intangible, wherever located, and all proceeds, products, rents, and profits thereof (all of the foregoing, but excluding any claims or litigation rights pursuant to sections 544, 545, 547, 548 and 550 of the Bankruptcy

Code, are collectively, the "Adequate Protection Liens"), to secure the amount of the Prepetition Indebtedness equal to the diminution, if any, subsequent to the Petition Date, in value of the Agent's and the Prepetition Lenders' interests in the Prepetition Collateral whether by depreciation, use, sale, loss, decline in market price, preservation, or disposition of assets of the Debtors that do not constitute Prepetition Collateral, imposition of the automatic stay, or otherwise (together with the Adequate Protection Payments (as hereinafter defined), shall be referred to hereinafter as the "Adequate Protection Obligations"). Except as expressly set forth in this Interim Order, the liens granted herein shall not be subject to any liens which are avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, and shall not be subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise. To the extent that the adequate protection provided herein proves inadequate, the Agent on behalf of the Prepetition Lenders shall be deemed to have an allowed claim with priority over all other administrative claims and expenses as provided in section 507(b) of the Bankruptcy Code; provided that the Agent's 507(b) claims shall at all times have priority over any section 507(b) claim asserted by any junior creditor.

6. **Adequate Protection Payments**. As further adequate protection, the Agent and the Prepetition Lenders shall be entitled and shall promptly and timely receive from the Debtors current cash payments as and when provided in the Budget (collectively, the "Adequate Protection Payments").

7. **Priority of Adequate Protection Obligations**. The Adequate Protection Obligations shall have priority over all administrative expenses of the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 552, or 726 (to the extent permitted by law) of the Bankruptcy Code ("Superpriority"). No costs or administrative

expenses which have been or may be incurred in these Chapter 11 Cases, in any conversion of any of these Chapter 11 Cases pursuant to section 1112 of the Bankruptcy Code, or in any other proceeding related thereto, and no priority claims, including, without limitation, any other Superpriority claims, are or will be prior to or on a parity with the claims of the Agent and the Prepetition Lenders against the Debtors arising as a result of the Adequate Protection Obligations, arising under any provision of this Interim Order or the liens granted herein, or arising under the Prepetition Loan Documents.

8. **Restrictions on the Use of Proceeds**. From and after the date of entry of this Interim Order, the proceeds of the Prepetition Collateral and Cash Collateral shall not, directly or indirectly, be used to pay any expenses, payments, and/or disbursements of the Debtors or incurred by the Debtors except for: (a) those obligations of the Debtors which are then due, expressly permitted under the Budget or this Interim Order, and in such amounts and at the times as clearly identified in the Budget and/or this Interim Order; (b) compensation and reimbursement of expenses allowed by the Court to Court-approved professionals of the Debtors to the extent that such fees and expenses are in accordance with the line items for such professionals in the Budget (if any); and (c) amounts due to the Agent or the Prepetition Lenders and its accountants, attorneys, or other professionals hereunder or under the Prepetition Loan Documents, which amounts shall be reasonable, but shall not otherwise be subject to the approval of this Court; provided that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clauses (a) or (b) and shall not affect the right of the Agent or the Prepetition Lenders to object to the allowance and payment of such amounts. In no event shall any costs or expenses of administration be imposed upon the Agent or the Prepetition Lenders or any of the Prepetition Collateral pursuant to sections 105(a),

506(c), and/or 552 of the Bankruptcy Code or otherwise without the prior written consent of the Agent, and no such consent shall be implied from any action, inaction, or acquiescence by the Agent.

9. **The Automatic Stay**. The automatic stay provisions of section 362 of the Bankruptcy Code, to the extent applicable, are hereby lifted, vacated, modified, and/or terminated as to the Agent to the extent necessary to implement the provisions of this Interim Order, thereby permitting the Agent, *inter alia*, to receive and apply (from and after the Petition Date) all cash, checks, or other collections or proceeds from the Prepetition Collateral and/or Cash Collateral (including any and all Adequate Protection Payments pursuant to this Interim Order and the Prepetition Loan Documents), and to file or record any UCC-1 financing statements mortgages, deeds of trust, security deeds, and other instruments and documents evidencing or validating the provisions of this Interim Order.

10. **Termination**. Notwithstanding anything herein or in the applicable Prepetition Loan Documents, the Debtors shall no longer be authorized to use Cash Collateral or the Prepetition Collateral pursuant to this Interim Order, the Prepetition Loan Documents, or otherwise (and the limited consent herein to the use of Cash Collateral shall be immediately terminated) from and after the date (the "Termination Date") that is one (1) business day after Debtors' receipt of written notice from the Agent that a Termination Event (as hereinafter defined) has occurred and is continuing (with a copy to the U.S. Trustee, each Committee (if any) or its/their counsel (if any)). For purposes of this Interim Order, the occurrence of any of the following events shall constitute a "Termination Event":

   (a)    The non-compliance of any term or provision of the Budget or this Interim Order.

(b)    Any diminution in value of any of the Prepetition Collateral or Cash Collateral since the Petition Date other than as contemplated by the Budget.

(c)    If on a cumulative basis, tested weekly from the Petition Date, cash receipts are less than the cash receipts projected in the Budget. The Debtors shall not provide any incentives or discounts to customers that did not exist as of the Petition Date to expedite collections.

(d)    If on a cumulative basis, tested weekly from the Petition Date, cash disbursements exceed the cash disbursements projected in the Budget.

(e)    One or more Events of Default (except a Financial Covenant Failure) as defined under the Prepetition Loan Documents (as amended by this Interim Order) shall have occurred subsequent to the Petition Date and be continuing beyond any applicable cure period,

(f)    The filing of an adversary proceeding by any party-in-interest against the Agent, the Prepetition Lenders or any of their respective interests for any reason.

(g)    Any Cash Collateral is diverted from the Debtors' businesses in a manner inconsistent with the Prepetition Loan Documents, this Interim Order, or the Budget.

(h)    The earliest to occur of the following:

(i)    November 5, 2009;

(ii)    the filing of any motion to sell any of Debtors' assets without the express written consent of the Agent;

(iii)    the lapse or termination of the Debtors' exclusive periods to file a disclosure statement and to file and solicit a plan of reorganization pursuant to section 1121 of the Bankruptcy Code;

(iv)    the effective date of any plan of reorganization or liquidation for the Debtor;

14

(v)    the filing of a plan that does not provide for the indefeasible payment of the Prepetition Indebtedness in full in cash on the effective date of such plan;

(vi)    conversion of any of these Chapter 11 Cases to cases or a case under chapter 7 of the Bankruptcy Code;

(vii)    dismissal of any of these Chapter 11 Cases;

(viii)    entry of any order pursuant to section 364 of the Bankruptcy Code authorizing the Debtors to obtain credit that does not provide for the indefeasible payment of the Prepetition Indebtedness in full in cash on the closing date of such financing;

(ix)    the entry of an order appointing a trustee or an examiner in any of these Chapter 11 Cases;

(x)    the entry of an order by a court of competent jurisdiction reversing, amending, supplementing, staying, vacating, or otherwise modifying this Interim Order without the written consent of the Agent;

(xi)    the entry of an order authorizing the sale of any of the Debtors' assets that does not provide for the indefeasible payment of the Prepetition Indebtedness in full in cash on the sale; and

(xii)    the automatic stay is lifted as to any party in order to permit foreclosure on any of the Prepetition Collateral.

11.    **Rights upon Termination**.  On the Termination Date, (a) the Debtors' right to use the Cash Collateral shall automatically terminate and the Debtors shall cease all use of Cash Collateral; (b) the exclusive periods to file a disclosure statement and to file and solicit a plan of reorganization pursuant to section 1121 of the Bankruptcy Code shall immediately expire; and (c) the Agent may, upon three (3) business days' written notice to the Debtors (with a copy to counsel for the U.S. Trustee and the Committee, if any) exercise the rights and remedies available under this Interim Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral, without further order or application to the Court and the automatic stay is hereby modified and vacated to the extent necessary to permit such actions, so long as no order prohibiting such action is entered by this Court during

the above-referenced three (3) business day period. The only issue at any hearing during such three (3) business day period that may be raised by any party shall be limited to whether, in fact, a Termination Event has occurred and is continuing, and such party shall have the burden of proof and the Debtors shall be deemed to have waived their right (if any) to seek any relief (including, without limitation, any right to use, or seek authority from the Court to use, any Prepetition Collateral or the proceeds thereof, alternative financing under section 364 of the Bankruptcy Code, injunctive relief under section 105 of the Bankruptcy Code, or otherwise). Notwithstanding the occurrence of the Termination Date or anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to the Agent or the Prepetition Lenders under this Interim Order shall survive the Termination Date. On the Termination Date, the Prepetition Indebtedness shall be immediately due and payable and the Agent and the Prepetition Lenders shall have all other rights and remedies provided in the Prepetition Loan Documents. The Agent and the Prepetition Lenders shall be entitled to apply the payments or proceeds of the Prepetition Collateral in accordance with the provisions of the Prepetition Loan Documents and/or this Interim Order, and in no event shall the Agent or the Prepetition Lenders be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the Prepetition Collateral or otherwise.

12. **Limitations on Cash Collateral Use**. Notwithstanding anything herein, no proceeds of the Prepetition Collateral or the Cash Collateral shall be used for the purpose of: (a) objecting to, challenging, or contesting in any manner, or in raising any defenses to, the amount, validity, extent, perfection, priority, or enforceability of the Prepetition Indebtedness or any liens or security interests with respect thereto (excluding any investigation related thereto which shall be subject to the limitations set forth in paragraph 13) or the Prepetition Loan

Documents; (b) asserting any claims or causes of action against the Agent or the Prepetition Lenders, including, without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, or 550 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (c) selling any of the Prepetition Collateral outside the ordinary course of business except as specifically permitted in writing by Agent; (d) incurring any new indebtedness; or (e) modifying the rights of the Agent or the Prepetition Lenders under this Interim Order or the Prepetition Loan Documents (as may be amended by this Interim Order).

13. **Investigation Period**. Any party-in-interest (other than the Debtors) or any Committee with the requisite standing to do so, shall be permitted 60 calendar days from the Petition Date (the "Investigation Period"), to (a) investigate (subject to the limitations set forth in the Budget and in an amount not to exceed $10,000) and challenge, only by filing an adversary proceeding, the validity, enforceability, priority, perfection, or amount of the Prepetition Indebtedness, the Agent's security interests in and liens on the Prepetition Collateral in respect thereof; or (b) assert, only by filing an adversary proceeding, any claims or causes of action against the Agent or the Prepetition Lenders. If no such adversary proceeding is filed during the Investigation Period: (i) the Prepetition Indebtedness shall constitute allowed claims (without the necessity of filing proofs of claim) against the Debtors and shall not be subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise; (ii) the Prepetition Liens on the Prepetition Collateral shall be deemed legal, valid, binding, enforceable, duly perfected, not subject to defense, counterclaim, offset of any kind, or subordination, and such liens are otherwise unavoidable; and (iii) the Agent, the Prepetition Lenders, the Prepetition Indebtedness,

the Prepetition Loan Documents, and the Prepetition Liens shall not be subject to any other or further claims, counterclaims, causes of action, lawsuits, or challenges by any party-in-interest or any successor thereto.

14. **Certain Reporting Requirements**. The Debtors shall observe and comply with all of the financial reporting and financial performance covenants and conditions (except the Financial Covenant Failure) set forth in the Prepetition Loan Documents. The Debtors' compliance with such covenants and conditions may be determined based upon financial reports and statements, including any "certificate" to be furnished by the Debtors to the Agent (the form of which shall be determined by the Agent in its sole and absolute discretion). In addition to the covenants and conditions set forth in the Prepetition Loan Documents, the Debtors shall certify to the Agent and its counsel in writing by 4:00 p.m. (prevailing Central time) on Tuesday of each week that the Debtors spent the Cash Collateral in accordance with the Budget for the immediately preceding week. With such written certification, the Debtors shall provide the Agent and its counsel with written reports (for the subject period), in form and substance satisfactory to the Agent, illustrating: (a) all cash receipts by the Debtors; (b) all payments made by the Debtors; (c) copies of all invoices issued by the Debtors; (d) and the updated weekly actual performance compared to the Budget, line-item by line-item, stating all variances and providing a narrative discussion and analysis by management with respect to any and all negative variances; and (e) such other reports as the Agent may request from time to time.

15. **Execution of Documents**. The Debtors shall execute and deliver to the Agent all such agreements, financing statements, instruments, and other documents as the Agent may reasonably request to evidence, confirm, validate, or perfect the liens granted pursuant hereto. All liens granted herein to secure repayment of the Adequate Protection Obligations shall,

pursuant to this Interim Order, be and they hereby are, deemed perfected, and no further notice, filing, or other act shall be required to effect such perfection; provided, however, if the Agent shall, in its sole discretion, choose to file such mortgages, financing statements, notices of liens and security interests, and other similar documents, all such mortgages, financing statements, or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

16. **Access to the Debtors**. Debtors shall permit representatives, agents, and/or employees of the Agent, including professionals retained by the Agent's legal professionals, to have reasonable access to its premises and records during normal business hours (without unreasonable interference with the proper operation of Debtors' businesses) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request. Debtors shall also permit representatives, agents, and/or employees of the Agent to observe Debtors' conduct and compliance with the terms and provisions of this Interim Order and their respective loan documents.

17. **Successors**. This Interim Order shall be binding upon all other parties-in-interest, including, without limitation, the Debtors (and their respective successors and assigns), and shall inure to the benefit of the Agent and the Prepetition Lenders and the Debtors and their respective successors and assigns (including, without limitation, any trustee, estate administrator, responsible person or representatives, or other fiduciary or similar person hereafter appointed as a legal representative of the Debtors, or with respect to the property of the Debtors' estate), any and all Committees, and the Debtors' creditors.

18. **Ratification and Modification of Intercreditor Agreement**. The terms and provisions of the Intercreditor Agreement remains in full force and effect, except to the extent

modified by the terms of this Interim Order. Pursuant to section 510 of the Bankruptcy Code, the subordination provisions of the Intercreditor Agreement are enforceable in any of these Chapter 11 Cases (or, in the case these Chapter 11 Cases are converted to proceedings under chapter 7 of the Bankruptcy Code, in such chapter 7 cases), to the same extent that such provisions are enforceable under applicable non-bankruptcy law.

19. **No Deemed Control**. By consenting to this Interim Order, the Agent or the Prepetition Lenders shall not be deemed to be in control of the Debtors or their operations or to be acting as a "responsible person," "managing agent," or "owner or operator" with respect to the operation or management of the Debtors.

20. **Subsequent Reversal or Modifications**. In the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, no such modification, amendment, or vacation shall effect the validity and enforceability of any lien or priority authorized or created hereby. Notwithstanding any such modification, amendment, or vacation, any claim or lien granted to the Agent or the Prepetition Lenders hereunder arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of this Interim Order, and the Agent and the Prepetition Lenders shall be entitled to all of the rights, remedies, privileges, and benefits, including the liens and priorities granted herein, with respect to any such claim.

21. **No Waiver of Rights**. Notwithstanding anything to the contrary herein, this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of the Agent or the Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the right of the Agent or the Prepetition Lenders to (i) request additional adequate protection of its interests or

relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code, (ii) request conversion of these Chapter 11 Cases to chapter 7, and/or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan; or (b) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Lenders. The rights and obligations of the Debtors and the rights, claims, security interests, liens, and priorities of the Agent and the Prepetition Lenders arising under this Interim Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, liens, and priorities of the Agent and the Prepetition Lenders granted under the Prepetition Loan Documents.

22. **Final Hearing**. The hearing to consider entry of the Final Order with respect to the Motion shall take place on _____, 2009 at __:__ _.m. (Central time) (the "Final Hearing").

23. **Adequate Notice; Notice of Final Hearing**. The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001 and the local rules of the Court. Under the circumstances, no further notice of the request for relief granted at the Interim Hearing is required. Within two (2) business days of the entry of this Interim Order, the Debtors shall serve, by first class mail or electronic mail, a copy of this Interim Order and a notice of the Final Hearing (the "Final Hearing Notice"), to all parties as designated in paragraph IV B of the Motion and shall file a certificate of service regarding same with the Clerk of the Court. Such evidence shall constitute good and sufficient notice of the Final Hearing.

24. **Objection Deadline**. The Final Hearing Notice shall state that any party-in-interest objecting to the relief sought at the Final Hearing shall make such objection in writing setting forth with particularity all facts relied upon and all grounds therefor, and shall be filed

21

with the Court on or before November __ , 2009 not later than 4:00 p.m. (Central time) (the "Objection Deadline"), and concurrently served so as to be *actually received* by the Objection Deadline by the following parties: counsel for the Debtors, Ronald Hornberger, Plunkett & Gibson, Inc., Suite 1100, Renaissance Tower, San Antonio, Texas, and David S. Gragg, Langley & Banack, Inc., Suite 900, Trinity Plaza II, 745 East Mulberry, San Antonio, TX 78212-3166 ; counsel for the Agent, Katten Muchin Rosenman LLP, 525 West Monroe Street, Chicago, Illinois 60661, Attn: John P. Sieger and Oppenheimer, Blend, Harrison and Tate, Inc., 711 Navarro, Suite 600, San Antonio, Texas 78205 Attn: Raymond W. Battaglia; counsel for Glenrose Holdings, LLC, David S. Elder, Gardere Wynne Sewell LLP, 1000 Louisiana, Suite 3400, Houston, Texas 77002-5011; and, the U.S. Trustee, United States Trustee, Western District of Texas, San Antonio Office, 615 E. Houston Street, Suite 533, San Antonio, TX 78205, Attention: Nancy Ratchford, Assistant US Trustee. Unless an objecting party (or its counsel) appears at the Final Hearing to assert the basis for such timely filed objection, such objection shall be deemed to have been waived and abandoned by such objecting party.

25. **Binding Effect**. The terms of this Interim Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

**CONSENTED AND AGREED TO BY:**

**SOUTH TEXAS OIL COMPANY,**
**SOUTHERN TEXAS OIL COMPANY,**
**STO OPERATING COMPANY,**
**STO PROPERTIES LLC AND**
**STO DRILLING COMPANY.** the Debtors

By:_____
       Their Counsel

**SUMMERLINE ASSET MANAGEMENT, LLC,**
the Agent (as successor in interest via assignment to
Viking Asset Management, LLC solely in its
capacity as collateral agent)

By:_____
       Its Counsel

**LONGVIEW MARQUIS MASTER FUND, L.P.,**
**SUMMERVIEW MARQUIS FUND, L.P.**
the Prepetition Lenders

By:_____
       Their Counsel

                                 ###

**<u>ORDER PREPARED BY</u>:**
Ronald Hornberger
Plunkett & Gibson, Inc.
70 N.E. Loop 410, Suite 1100
San Antonio, TX 78216

## Exhibit A

**Budget**

| Week Number<br>Week Beginning | | 1<br>10/26/09 | | 2<br>11/2/09 | | 3<br>11/9/09 | | 4<br>11/16/09 |
|---|---|---|---|---|---|---|---|---|
| **Beginning Available Cash Balance** | $ | 516,557 | $ | 349,638 | $ | 144,577 | $ | (3,316) |
| **Receipts** | | | | | | | | |
| Oil and gas sales receipts | | 105,754 | | - | | 13,000 | | 476,140 |
| Transfer to segregated Royalty/Revenue/Advance account | | (52,877) | | - | | (6,500) | | (238,070) |
| Joint interest accounts receivable | | | | | | | | |
| Other | | | | | | | | |
| **Total Receipts** | | 52,877 | | - | | 6,500 | | 238,070 |
| **Cash Available for Disbursements** | | 569,434 | | 349,638 | | 151,077 | | 234,754 |
| **Disbursements** | | | | | | | | |
| Lease Operating Expenses | | 34,186 | | 34,186 | | 34,186 | | 34,186 |
| Lease Operating Expenses - Workovers | | 23,093 | | 60,000 | | 6,559 | | 7,137 |
| Severance Taxes | | 3,966 | | - | | 488 | | 10,951 |
| Capital Expenditures | | - | | - | | - | | - |
| General and Administrative Expenses | | | | | | | | |
| Salaries and benefits | | 59,096 | | - | | 46,785 | | - |
| Rent and other office expenses | | 16,288 | | 1,208 | | 1,208 | | 1,208 |
| Professional services | | 2,093 | | 46,593 | | 2,093 | | 14,593 |
| Legal fees - recurring | | 18,000 | | - | | - | | 25,000 |
| Legal fees - restructuring | | - | | - | | - | | - |
| Travel and related | | 860 | | 860 | | 860 | | 860 |
| Insurance - auto, office contents, | | - | | - | | - | | - |
| Other miscellaneous | | 605 | | 605 | | 605 | | 605 |
| Total General and Administrative | | 96,942 | | 49,266 | | 51,551 | | 42,266 |
| Debt Service | | | | | | | | |
| Cash collateral protection | | 61,051 | | 61,051 | | 61,051 | | 61,051 |
| Principal and interest payments - other debt | | 558 | | 558 | | 558 | | 558 |
| New loan - Origination fees | | | | | | | | |
| Interest - New loan | | | | | | | | |
| Sunrise Capital brokerage fees - New loan | | | | | | | | |
| New lender legal fees | | | | | | | | |
| Total Debt Service | | 61,609 | | 61,609 | | 61,609 | | 61,609 |
| **Total Disbursements** | | 219,796 | | 205,061 | | 154,393 | | 156,149 |
| **Ending Cash Balance before New Loan Borrowings** | | 349,638 | | 144,577 | | (3,316) | | 78,605 |
| Borrowings | | | | | | | | |
| **Ending Cash Balance** | $ | 349,638 | $ | 144,577 | $ | (3,316) | $ | 78,605 |
| **Senior Secured Notes Balance** | $ | 16,465,321 | $ | 16,465,321 | $ | 16,465,321 | $ | 16,465,321 |
| **New Loan Balance** | $ | - | $ | - | $ | - | $ | - |
| **Segregated Royalty/Revenue/Advance account** | | | | | | | | |
| Beginning Balance | | 783,813 | | 836,690 | | 836,690 | | 593,190 |
| Additions | | 52,877 | | - | | 6,500 | | 238,070 |
| Distributions | | | | | | (250,000) | | |
| Ending Balance | $ | 836,690 | $ | 836,690 | $ | 593,190 | $ | 831,260 |



EXHIBIT "B"