UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS,
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | Administratively Consolidated Under |
| | § | |
| SOUTH TEXAS OIL COMPANY | § | CASE NO. 09-54233 |
| COMPANY, ET AL, | § | |
| | § | Chapter 11 |
| DEBTORS | § | |

**MOTION OF DEBTORS TO APPROVE COMPROMISE AND SETTLEMENT BETWEEN SOUTH TEXAS OIL COMPANY, ET AL, SUMMERLINE ASSET MANAGEMENT, LLC, NOT INDIVIDUALLY, BUT SOLELY AS AGENT FOR THE LONGVIEW MARQUIS MASTER FUND, L.P. AND SUMMERVIEW MARQUIS FUND, L.P AND GIDDINGS INVESTMENTS LLC , LEEXUS OIL & GAS, LLP AND ITS AFFILIATED ENTITIES, MARK JAEHNE, BENNIE JAEHNE AND CERTAIN WORKING INTEREST OWNERS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

NOW COME the Debtors, SOUTH TEXAS OIL COMPANY, ET AL ("Debtors" or "Movants") in this bankruptcy proceeding and file this their Motion To Approve Compromise And Settlement Between South Texas Oil Company, et al, (collectively the "Debtors"), Summerline Asset Management, LLC, not individually, but solely as Agent for the Longview Marquis Master Fund, L.P. and Summerview Marquis Fund, L.P. ("Prepetition Lenders") and Giddings Investments LLC (the "DIP Lender" and together with the Prepetition Lender, collectively referred to as the "Lenders"), Leexus Oil & Gas, LLP and its affiliated entities ("Leexus"), Mark Jaehne, and Bennie Jaehne (collectively the "Jaehnes") and certain Working Interest Owners (collectively the "Working Interest

Owners") (the "Motion") and in support thereof would respectfully show the Court as follows:

## I.

### Jurisdictional and Core Allegations

1. Jurisdiction is grounded in this court under 28 U.S.C. § 1334(b) because this proceeding is one arising under Title 11, arising in the above referenced title 11 case, and related to the above referenced Title 11 case. This Motion is governed by 11 U.S.C. §§ 363 and 502 and Rule 9019, Rules of Bankruptcy Procedure.

2. This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## II.

### Factual Background

*A.  History of the Case*

1. On April 20, 2007 the Debtors acquired interests in certain identified oil and gas interests from Leexus pursuant to an Agreement and Plan of Merger ("Merger"). Leexus alleged that it transferred working interests in certain oil and gas interests to the Working Interest Owners prior to the Merger.

2. After consummation of the Merger between an affiliate of the Debtor and an affiliate of Leexus, disputes arose between Leexus and the Debtors regarding the terms of the Merger and more specifically concerning title to oil and gas interests affected by that transaction. Protracted litigation resulted. (the "Initial Litigation").

3. On May 15, 2008 the Debtors, Leexus and the Jaehnes entered into a Settlement Agreement intending to resolve all disputes arising out of or relating to the

matters contested in the Initial Litigation (the "Settlement Agreement"). However, the Debtor and Leexus interpret the terms of the Settlement Agreement differently and further litigation has ensued over the relative property interests of the parties under the Settlement Agreement.

4. On October 30, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and have been administratively consolidated into the above styled and numbered proceeding (the "Bankruptcy Case").

5. The Prepetition Lenders hold valid and perfected liens upon substantially all of the Debtors' assets, including the assets acquired by the Debtors pursuant to the Merger. The Prepetition Lenders liens were perfected prior to the Settlement Agreement and they assert that the transactions contemplated in the Settlement Agreement are subject to their liens.

6. On December 4, 2009 the Bankruptcy Court granted the DIP lender a first and priming lien upon substantially all of the Debtors' assets pursuant to the "Final Order Granting Motion Pursuant to 11 U.S.C. Sections 105, 361, 362, 364 And 507 and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (i) Authorizing The Debtors to Incur Postpetition Senior Secured Superpriority Indebtedness; (ii) Granting Security Interests and Superpriority Claims; (iii) Granting Adequate Protection; and (iv) Modifying The Automatic Stay" (the "DIP Order").

7. During the pendency of the Debtors' Bankruptcy Cases, certain disputes have arisen regarding (i) the rights and obligations of Leexus, the Jaehnes and the Debtor under the Settlement Agreement, (ii) the validity of the property interests alleged to be

owned by the Working Interest Owners and (iii) the priority of interests to certain oil and gas interests between the Jaehnes, Leexus and the Working Interest Owners and the Lenders;

8.  Additionally, after the Petition Date, the Debtor determined that the assignments to the Working Interest Owners were executed subsequent to the Merger, were executed by Leexus, which held no legal title at the time. Accordingly, the validity of the interests asserted by the Working Interest owners is in dispute.

9.  After extensive negotiations, the parties to these disputes have arrived at a global resolution of all disputes between them as set forth in the Global Settlement Agreement attached to this Motion as Exhibit 1.

### III.

### The Compromise and Settlement Agreement

10. The Debtors and the Leexus have previously attempted to settle their disputes after lengthy and expensive litigation. As evidenced by the fact that further disputes have ensued regarding the construction of the Settlement Agreement, they have been unable to do so. Recently, negotiations between all parties to the disputes have resumed and the parties were able to arrive at an agreement settling substantially all remaining disputes between the parties. The Debtors file this Motion seeking approval of and authority to consummate the agreement of the parties.

11. Generally, the agreement between the parties seeks to compromise the existing disputes as follows:

  a. The Debtors and Leexus will execute corrective assignments establishing the agreed upon Overriding Royalty Interests ("ORRI") of the Debtors and Leexus, thereby resolving the disputed title to certain oil and gas interests.[1]

  b. Leexus will execute appropriate conveyance documents memorializing the conveyance of ORRI's to the Debtors in the Bastrop I oil and gas properties.[2]

  c. The Jaehne's will execute an oil and gas lease on a tract adjacent to the Debtor's Koehler well to accommodate future operations on the Koehler lease

  d. Leexus, the Jaehne's and the Debtors have agreed to a series of accommodations resolving disputes concerning the terimination of the Durrenberger Lease and a salt water disposal pipeline on the Jaehne's property.

  e. The Debtors will execute a stipulation of interest recognizing the regular working interests of the Working Interest Owners[3].

  f. The Prepetition Lender and the DIP Lender will consent to the corrective transfers to Leexus and the Working Interest Owners as contemplated in the Global Settlement Agreement and their respective liens shall attach to any property interests transferred to the Debtors as contemplated in the Global Settlement Agreement.

  g. The Jaehne's unsecured claim in the amount of $1.5 million will be an allowed claim.

  12. The terms of the settlement are set forth in detail in the "Global Settlement Agreement" attached hereto and incorporated herein for all purposes as Exhibit "1" (the "Global Settlement Agreement"). Creditors and parties in interest are referred to that

---

[1] A schedule reflecting the agreed ORRI's of Leexus and the Debtors is attached as Exhibit C to the Global Settlement Agreement.
[2] A schedule reflecting the Bastrop I ORRI's is attached as Exhibit D to the Global Settlement Agreement
[3] A schedule reflecting the recognized interests of interests of the Working Interest Owners and the identity of those working interests owners is attached to the Global Settlement Agreement as Exhibit A.

document for the full and complete terms of the proposed settlement. Descriptions of the principal terms of the Global Settlement Agreement are set forth herein above. To the extent that the description in this Motion differs from the precise terms of the Global Settlement Agreement, the terms of the Global Settlement Agreement shall control.

### IV.

### Request for Approval of the Settlement Agreement

13. Movants believe that the proposed Global Settlement Agreement is in the best interests of the Debtors' estate and its creditors. Movants submit the Global Settlement Agreement set out herein for approval pursuant to Rule 9019, Rules of Bankruptcy Procedure.

14. In ruling on the propriety of the compromise, the Court should determine whether the settlement is in the best interests of the bankruptcy estate. *Connecticut General Life Insurance Co. v. United Companies Financial Corporation (In re Foster Mortgage Corp.)* 68 F.3d 914, 917 (5th Cir. 1995); *United States v. Aweco, Inc. (In the Matter of Aweco, Inc.)* 725 F.2d 293, 298 (5th Cir. 1984), *cert den.* 469 U.S. 880 (1984).

15. To make such a determination, the Court should compare the relative strengths and weaknesses of each party's claims and the probability of success for each of the parties should the claims and disputes continue to be litigated. The Fifth Circuit has developed a three-part test for evaluating whether a settlement is fair, equitable and in the best interests of the estate and creditors which requires the Court to consider (i) probability of success on the merits, with due consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and (iii) all other factors bearing on the wisdom of the

compromise. *See,* ***Connecticut General Life Insurance Co. V. United Companies Financial Corporation (In re Foster Mortgage Corp.)*** 68 F.3d 917; ***In re: Jackson Brewing Co.*** 624 F.2d 609; *see also,* ***In re American Reserve Corp.*** 941 F.2d 161 (7th Cir. 1987). Of paramount importance in the determination of reasonableness of a settlement is the interest of creditors.

16. While it is necessary for the proponent of a compromise to set forth the factual and legal basis for the compromise so the court can make an intelligent and informed evaluation of the proposed settlement, it is not incumbent upon the proponent to present a mini-trial or a full evidentiary hearing. ***Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.),*** 844 F.2d 1142, 1158-59 (5th Cir. 1988), *cert. den.,* 105 S. Ct. 31 (1989); *Aweco,* 725 F.2d at 298.

17. Application of the foregoing factors under the Fifth Circuit's test supports a determination of this Court that the Global Settlement Agreement represents a fair and equitable compromise following arm's length negotiations and is in the best interests of this estate and all creditors. This Global Settlement Agreement was negotiated by the parties after thorough investigation of all possible claims and causes of action. The Global Settlement Agreement was arrived at after thorough due diligence by all parties.

18. Significant factual disputes and legal issues exist concerning the property interests which are the subject of the disputes between the Debtors, Leexus and the Working Interest Owners. The disputes between Leexus and the Debtors have already been the subject of expensive and lengthy litigation, and yet continue in dispute even after the parties entered into a complicated settlement agreement. The factual and legal issues arising from the faulty assignments to Working Interest Owners have yet to be

7

litigated and would almost certainly result in similar litigation if not resolved by this compromise.

19. The ORRI's which are the currency exchanged between the parties to achieve this compromise are ultimately of interest only to the parties to the Global Settlement Agreement. If the Debtors' were successful in recovering the disputed ORRI's, those interests would be the collateral of the DIP Lender and the Prepetition Lenders. All parties whose interests are directly affected by this compromise are in accord. The interests of other creditors and parties in interest are served by this compromise by (i) the avoidance of expensive litigation; (ii) the resulting enhancement of the collateral of the secured creditors resulting in reduced deficiency claims; (iii) the ability to conclude the auction sale and a separate settlement with the Unsecured Creditors Committee which are ultimately interrelated to this compromise .

20. The Global Settlement Agreement meets the requirements established by the Fifth Circuit for settlements. The Global Settlement Agreement resolves uncertain issues of law and fact while avoiding the attendant costs and delay of pursuing questionable claims. The Global Settlement Agreement is fair and equitable and is in the best interests of the Debtors' estates and their creditors. Based on the foregoing, the Movants requests that this Court approve the Global Settlement Agreement.

WHEREFORE PREMISES CONSIDERED, the Debtors requests that this Court enter Orders (i) approving the Global Settlement Agreement as set forth herein; (ii) authorizing the Debtors to take the actions described in this Motion, (iii) authorizing the Debtors to execute and enter into any required agreements, releases, agreed orders certificates, instruments or other documents required to consummate the Global

Settlement Agreement; and (vi) granting the Debtors such other and further relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted, this the ___ day of January, 2010.

| | And |
|---|---|
| RONALD HORNBERGER<br>PLUNKETT & GIBSON, INC.<br>Renaissance Plaza, Suite 1100<br>70 NE Loop 410<br>San Antonio, TX 78216<br>Telephone: (210) 734-7902<br>Telecopier: (210) 734-0379<br>E-mail: hornbergerr@plunkett-gibson.com | DAVID S. GRAGG<br>LANGLEY & BANACK, INCORPORATED<br>Suite 900, Trinity Plaza II<br>745 East Mulberry<br>San Antonio, TX 78212-3166<br>Telephone: (210) 736-6600<br>Fax: (210) 735-6889<br>E-mail: dgragg@langleybanack.com |

By: _____
RONALD HORNBERGER
Texas Bar No. 10004000
DAVID S. GRAGG
Texas Bar No. 08253300

ATTORNEYS FOR DEBTORS AND
DEBTORS-IN-POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was forwarded as indicated below on the ___ day of _____, 2010, to:

**Via Fax Transmission**
J. Byron Sandel, President
Sandel Energy, Inc.
P.O. Box 1917
Huntsville, TX 77342
Fax: (936) 295-6725

*All Debtors, Care of:*
Mike Pawelek
STO Oil Company
300 E. Sonterra Blvd., Suite 1220
San Antonio, TX 78258

9

MikeP@southexasoil.com

***Attorney for Official Committee of Unsecured Creditors***
**Via E-Mail**
Roberts, Stephen A.
Strasburger & Price, LLP
600 Congress Ave., Suite 1600
Austin, TX 78701
stephen.roberts@strasburger.com

***Counsel for the Agent***

**Via E-Mail**
Katten Muchin Rosenman LLP
Attn: John P. Sieger
525 West Monroe Street
Chicago, IL 60661
John.sieger@kattenlaw.com

***Local Counsel for the Agent***

**Via E-Mail**
Oppenheimer, Blend,
Harrison & Tate, Inc.
Attn: Raymond w. Battaglia
711 Navarro, Suite 600
San Antonio, TX 78205
rwb@obht.com

***United States Trustee***
**Via E-Mail** 0
Kevin M. Epstein
Trial Attorney
Office of the U.S. Trustee
P.O. Box 1539
San Antonio, TX 78295-1539
Kevin.M.Epstein@usdoj.gov

**Via E-Mail**
Nathaniel Peter Holzer
Jordan, Hyden, Womble,
Culbreth & Holzer, PC
500 N. Shoreline, Suite 900
Corpus Christi, TX 78471
pholzer@jhwclaw.com

**Via E-Mail**
Thomas S. Henderson
Attorney at Law
711 Louisiana, Suite 3100
Houston, TX 77002-2716

thenderson@tsh-atty.com

**Via E-Mail**
William J. Albright
Albright & Albright, LLP
14916 Crosscreek
Austin, TX 78737
balbright@albrightllp.com

**Via E-Mail**
Jim Hoffman
Clemens & Spencer
112 East Pecan, Suite 1300
San Antonio, TX 78205
hoffman@clemens-spencer.com

**Via E-Mail**
Ronald J. Johnson
Attorney at Law
111 Soledad, Suite 1350
San Antonio, TX 78205
ronjohnson@rjjohnsonlaw.com

**Via E-Mail**
Steve A. Peirce
Fulbright & Jaworski
300 Convent, Suite 2200
San Antonio, TX 78205
speirce@fulbright.com

**Via E-Mail**
Mitchell R. Bearden
Attorney at Law
104 W. Washington St.
Giddings, TX 78942
mrbearden@msn.com

*Attorneys for Proposed DIP Lender*:
**Via E-Mail**
David Elder
Gardere, Wynne, Sewell, LLP
1000 Louisiana, Suite 3400
Houston, TX 77002-5011
ddelder@gardere.com

*/S/ Ronald Hornberger*                  .
RONALD HORNGERGER