# Exhibit 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **SOUTH TEXAS OIL COMPANY, et al.** | § | **Case No. 09-54233-LMC** |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |

## GLOBAL SETTLEMENT AGREEMENT

This Global Settlement Agreement ("Agreement") is made and entered by and between South Texas Oil Company, STO Operating Company and their affiliates (collectively the "Debtors"), Summerline Asset Management, LLC, not individually, but solely as Agent for the Longview Marquis Master Fund, L.P. and Summerview Marquis Fund, L.P. ("Prepetition Lenders") and Giddings Investments LLC (the "DIP Lender" and together with the Prepetition Lender, collectively referred to as the "Lenders"), Leexus Oil & Gas, LLP and its affiliated entities ("Leexus") Mark Jaehne, and Bennie Jaehne (collectively the "Jaehnes") and certain Working Interest Owners identified on Exhibit A (collectively the "Working Interest Owners") all being collectively referred to herein as the"Parties".

### RECITALS

WHEREAS, on April 20, 2007 the Debtors acquired interests in certain identified oil and gas interests from Leexus pursuant to an Agreement and Plan of Merger ("Merger");

WHEREAS, Leexus alleged that it transferred interests in certain oil and gas interests to the Working Interest Owners prior to the Merger;

WHEREAS, disputes arose between Leexus and the Debtors regarding the merger transaction, resulting in protracted litigation (the "Initial Litigation");

WHEREAS, on May 15, 2008 the Debtors, Leexus and the Jaehnes entered into a Settlement Agreement intending to resolve all dispute arising out of or relating to the matters contested in the Initial Litigation (the "Settlement Agreement");

WHEREAS, the Prepetition Lenders hold valid and perfected liens upon substantially all of the Debtors' assets;

WHEREAS, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on October 30, 2009;

WHEREAS, the DIP lender was granted a first and priming lien upon substantially all of the Debtors' assets pursuant to the "Final Order Granting Motion Pursuant to 11 U.S.C. Sections 105, 361, 362, 364 And 507 and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (i) Authorizing The Debtors to Incur Postpetition Senior Secured Superpriority Indebtedness; (ii) Granting Security Interests and Superpriority Claims; (iii) Granting Adequate Protection; and (iv) Modifying The Automatic Stay" entered by the Bankruptcy Court on December 4, 2009 (the "DIP Order");

WHEREAS, during the pendency of the Debtors' Bankruptcy Cases, certain disputes have arisen regarding (i) the rights and obligations of Leexus, the Jaehnes and the Debtor under the Settlement Agreement, (ii) the validity of the property interests alleged to be owned by the Working Interest Owners and (iii) the priority of interests to certain oil and gas interests between the Jaehnes, Leexus and the Working Interest Owners and the Lenders;

WHEREAS the Parties have reached an agreement regarding a global resolution of all disputes between them as set forth in this Agreement;

FOR AND IN CONSIDERATION of mutual promises, agreements, and other consideration described in this Agreement, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## ARTICLE I - DEFINITIONS

1.1    <u>Definitions</u>. Capitalized terms not identified in the Recitals to this Agreement have the meanings contained in this Article I.

1.2    "Bankruptcy Case" means the jointly administered Chapter case pending in the Bankruptcy Court styled In re SOUTH TEXAS OIL COMPANY, *et al.,* Case No. 09-54233-LMC.

1.3    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.,* as in effect on the Petition Date, together with all amendments and modifications thereto subsequently made, to the extent applicable to the Debtors' reorganization cases.

1.4    "Bankruptcy Court" means the United Stated Bankruptcy Court for the Western District of Texas San Antonio Division

1.5    "Claim" shall have the meaning assigned to such term by section 101(5) of the Bankruptcy Code.

1.6    "Durrenberger Lease" means the Oil and gas lease recorded in Volume 682, Page 505, Real Property Records, Lee County, Texas, and in the GREAT WEST ENERGY AND EXPLORATION, INC., DURRENBERGER UNIT (RRC #22699), situation in the John W. Peacock Survey, A-255, Lee County, Texas, including all personal property, fixtures and equipment located thereon attributable to the interest being conveyed.

1.7 "Effective Date" means, and shall occur on, the first business day upon which all of the conditions to occurrence of the Effective Date contained in this Agreement or in an order of the Bankruptcy Court approving this Agreement have been satisfied or, if applicable, waived.

1.8 "Final Order" means an order of a court: (a) as to which the time to appeal, petition for writ of certiorari, or otherwise seek appellate review or to move for reargument, rehearing, or reconsideration has expired and as to which no appeal, petition for writ of certiorari, or other appellate review, or proceedings for reargument, rehearing, or reconsideration shall then be pending; (b) as to which any right to appeal, petition for certiorari, or move for reargument, rehearing, or reconsideration shall have been waived in writing by the party with such right; or (c) in the event that an appeal, writ of certiorari, or other appellate review or reargument, rehearing, or reconsideration thereof has been sought, which shall have been affirmed by the highest court to which such order was appealed, from which writ of certiorari or other appellate review or reargument, rehearing, or reconsideration was sought, and as to which the time to take any further appeal, to petition for writ of certiorari, to otherwise seek appellate review, and to move for reargument, rehearing, or reconsideration shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or under section 1144 of the Bankruptcy Code, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.9 "Graeco Lease" means the oil and gas lease described in Exhibit B attached to this Agreement.

1.10 "JOA" means Joint Operating Agreement.

1.11 "ORRI" means Overriding Royalty Insterest.

1.12 "Petition Date" means, as to each Debtor, the date on which the Debtor's bankruptcy case was commenced by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

1.13 "Purchaser" means the purchaser(s) of the Debtors' assets pursuant to a Final Order of the Bankruptcy Court.

1.14 "State Court Litigation" means the lawsuit styled _____ v. _____, pending in the ____ District Court for the _____ Judicial District, _____ County, Texas, Cause No. _____.

1.15 "Unsecured Claim" means any Claim that is not a Secured Claim, Priority Claim, or Priority Tax Claim.


## ARTICLE II – STIPULATION TO CERTAIN OIL AND GAS INTERESTS

2.1 The Debtors and Leexus agree that Leexus' ORRI in the Debtors' Giddings, Texas area oil and gas wells identified on Exhibit C attached hereto shall be the percentage reflected in the column titled "Leexus % ORRI".

2.2     The Debtors shall assign to Leexus a 1% ORRI in the Graeco Lease effective as of January 1, 2010 and Leexus releases any and all other claims to any ORRI in the Graeco Lease

2.3     Leexus releases any and all claims to any funds held by the Debtor or any purchaser on account of any claims to an ORRI in excess of the ORRI interests of Leexus agreed to in this Agreement.

2.4     The Debtors and Leexus agree to execute any documents necessary to transfer, convey or cross –convey ORRI's to effectuate the ownership percentages set forth in Exhibit C.

2.5     Leexus shall convey to the Debtors the ORRI's in certain Bastrop I oil and gas properties identified in Exhibit D.

2.6     The Lenders consent to the conveyances of interest to Leexus provided for in this Agreement, free and clear of the Lenders liens.  All interests conveyed to the Debtor under this Agreement shall be subject to the Lenders existing liens.

<u>ARTICLE III – OTHER AGREEMENTS</u>

3.1     <u>Jaehne Lease.</u> On the Effective Date, Bennie C. Jaehne and Herman Jaehne shall enter into the Paid Up Oil and Gas Lease attached hereto as Exhibit E and the Debtors shall pay a bonus payment of $100 per acre.

3.2     <u>Salt Water Disposal Well.</u>     Leexus agrees that the salt water disposal agreement dated December 6, 2007 between Leexus Oil & Gas LLP as Lessor and Leexus Operating Company as Lessee, now STO Operating as successor in interest to Leexus Operating Company, gives STO Operating and its assigns the right and the right of way to run a pipeline to carry saltwater from the Dernell #2 Well in Fayette County to the Lorenz A-2 salt water disposal well in Fayette County.

        a)      The parties agree that the location of the proposed pipeline as reflected on Exhibit F is agreed, subject to reasonable variances.

        b)      The Debtors shall provide Leexus with a plat indicating the location of the pipeline within 60 days of the Effective Date.  The Debtors shall pay rent of $2000 (in arrears) to Leexus for each 30 days after the expiration of the 60 days until the plat is delivered to Leexus. Rent will not be prorated.  Accordingly, rent would not be owed unless the plat is not delivered on or before the 89th day after the Effective Date.

3.3     <u>Durrenberger Lease.</u> On the Effective Date, Leexus shall execute an assignment of the Durrenberger Lease to the Debtors.  Contemporaneously, the Jaehne's shall ratify the Durrenberger Lease as of the Effective Date, and such ratification will remain effective, provided that within 6 months after the Effective Date, the Debtors either (i) commence operations to enhance production; or (ii) pay $3000 in the nature of delay rentals.  Upon payment of such delay rentals, the Debtors will have an additional 6 month period to commence operations to enhance production.  In the event the Debtors fail to either timely commence operations to

enhance production or pay the delay rentals, the Jaehne's ratification of the Durrenberger Lease) will be void and the Jaehnes and the Debtors shall have any and all claims and defenses to the validity of that lease that they had prior to the Effective Date. Notwithstanding any event resulting in the voiding of the ratification, the assignment of the Durrenberger Lease shall remain valid and enforceable.

3.4     South Texas Oil Company Common Stock. Upon consummation of the sale of the Debtors' assets to the Purchaser, all of the common stock of South Texas Oil Company held in escrow for the benefit of the Jaehnes shall be released to the Jaehnes.

3.5     Recognition of Interests of Working Interest Owners.     Upon the Effective Date, the Debtors shall enter into a stipulation with cross conveyances as necessary to recognizing the specified regular working interests of the Working Interest Owners in certain oil and gas leases as identified in Exhibit A. The Lenders consent to the conveyance of the specified interests set forth in Exhibit A, free and clear of their respective liens.

3.6     Execution of Joint Operating Agreements. The Working Interest Owners shall enter into JOA's for all wells identified in Exhibit A and the JOA's shall be not be invalidated in the event less than all working interest owners execute the JOA's.

3.7     Jaehne's Allowed Claim.     On the Effective Date, the Unsecured Claim of the Jaehne's in the amount of $1,500,000 against (_____ *[which debtor?]*) shall be an allowed unsecured claim.

3.8     Dismissal of State Court Litigation. On the Effective Date, the Debtors and the Jaehne's shall take all steps and file any pleadings necessary to dismiss the State Court Litigation.

## ATICLE IV - CONDITIONS PRECEDENT

The provisions of this Agreement shall be effective on the date that an order entered by the Bankruptcy Court granting a motion to approve this Agreement becomes a Final Order. All ancillary agreements implementing the terms of this Agreement shall be held in escrow by an individual mutually agreed to by the Parties, and in the event the Parties are unable to agree, a person selected by the Court. Such implementing documents shall be held by the escrow until all such implementing documents are executed by all necessary parties.

4.1     Effective Date. The Effective Date of the plan shall be the date the order of Bankruptcy Court becomes a Final Order *(do we want this or just upon entry of an order)* .

## ARTICLE V - GENERAL PROVISIONS

5.1     Venue Jurisdiction. The venue for any dispute between the Parties arising from this Agreement shall be the Bankruptcy Court. The Parties agree that this Court has core jurisdiction over such matters. In the event that the Bankruptcy Court declines to exercise jurisdiction over a dispute arising from this Agreement, such a dispute may be brought in any court of competent jurisdiction.

5.2    Entire Agreement. This Agreement constitutes (unless otherwise specifically provided in this Agreement) a complete and exclusive statement of the terms of the agreement between the Parties with respect to its subject matter, and there are no representations, understandings, or agreements relating to this Agreement that are not fully expressed herein.

5.3    Further Assurances. The Parties shall cooperate fully in response to reasonable requests in order to effect the requirements of this Agreement, and the Parties shall use reasonable commercial efforts to execute and deliver, at the request of any other Party, such additional documents and instruments as may be reasonably required to carry out the intent of this Agreement.

5.4    No Reliance. Except as expressly stated in this Agreement, the Parties represent and warrant to each other that they are not relying on any statements of fact, oral or written, express or implied, or law as an inducement or grounds for entering this Agreement.

5.5    Advice of Counsel. The Parties acknowledge that they have read and considered this Agreement carefully, that it was negotiated by their attorneys with their express approval and authority, that they have discussed it in detail with their attorneys, that they have been given a reasonable period of time (as long as deemed necessary) to consider this Agreement before signing, that they fully understand the extent and impact of its provisions and that they have executed it knowingly and voluntarily and without any coercion, undue influence, threat, or intimidation of any kind whatsoever.

5.6    Amendments. This Agreement shall not be modified, altered, or amended in whole or in part except by a written instrument signed by all Parties.

5.7    Choice of Law. This Agreement shall be governed and interpreted in accordance with the laws of the State of Texas without giving effect to any conflicts of laws provisions, rules, or statutes that would require the application of the law of any other jurisdiction.

5.8    No Drafting Presumption. The Parties assume joint responsibility for the drafting of this Agreement, and no party shall be considered the drafter of this Agreement. All Parties knowingly waive any right to assert the existence of a presumption or convention regarding construction of this document against its drafter.

5.9    Successors and Assigns. The Parties' respective rights and obligations under this Agreement shall inure to the benefit of, and be binding upon, their successors and assigns.

5.10    No Assignment. No rights or obligations arising under this Agreement may be assigned without the written consent of all Parties to this Agreement.

5.11    No Third-Party Beneficiaries. Nothing in this Agreement is intended, or shall be construed, to give any person, other than a Party to this Agreement, any right, remedy, or claim under this Agreement.

5.12    No Admission. Nothing in this Agreement shall be deemed or construed as an admission by any Party of any liability or failure of its obligations.

5.13    Notices.  Any Party seeking to provide notice or make a request in connection with this Agreement shall do so by delivering such notice or request by return-receipt United States mail, facsimile, or by personal delivery to the following addresses:

| To the Debtors: | SOUTH TEXAS OIL COMPANY<br><br>AND<br><br>Ron Hornberger<br>Plunkett Gibson |
|---|---|
| To the Prepetition Lenders | Raymond W. Battaglia<br>Oppenheimer, Blend, Harrison, & Tate, Inc.<br>711 Navarro, Sixth Floor<br>San Antonio, TX 78205<br>Fax: (210) 224-7540 |
| To the DIP Lender | |
| To Leexus and the Jaehnes | William Allbright |

5.14    Counterparts and Signatures.    This Agreement may be executed in one or more counterparts for the convenience of the Parties, all of which together shall constitute one and the same instrument.  Facsimile signatures shall be treated as original signatures for all purposes.

Executed this ___ day of January, 2010.


DEBTORS


By: _____

      _____It's:_____


Summerline Asset Management, LLC,
not individually, but solely as Agent for the
Longview Marquis Master Fund, L.P.
and Summerview Marquis Fund L.P.


By: _____

      _____It's:_____


Giddings Investments LLC


By: _____

      _____It's:_____


Leexus Oil & Gas, LLP.


By: _____

      _____It's:_____


By: _____
      Mark Jeahne

By: _____
       Bennie Jeahne


The Working Interest Owners


By:_____
       Christopher Byrd, Attorney for Certain
       Of the Working Interest Owners

# EXHIBIT A

| Property Name | Owner Name | Int Type | Working Int | Property API# | County |
|---|---|---|---|---|---|
| ATLANTA-HATFIELD 1H | BairTex Energy, Inc. | W | 0.16500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Johnny Caswell | W | 0.00395000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Betty J. Dobos | W | 0.02000000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Echelon Oil & Gas, LLC | W | 0.23000000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Joseph H. Fisher | W | 0.01000000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Russell Galipp, Sr. | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Jay S. Ginsburg | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | D. John Henry | W | 0.01000000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Charlotte Jaehne | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Herman Jaehne | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Mark A. Jaehne | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Mark A. Jaehne | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Agujero Seco Resources, LLC | W | 0.01000000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Harold Roy Jordan & Martha Wilcoxson | W | 0.01000000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | SOUTH TEXAS OIL COMPANY | W | 0.33500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Leexus Oil, LLC | W | 0.00197500 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Leexus Oil, LLC | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Marty Lindner | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Merlyn Metzger | W | 0.01000000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | James M. Mitschke | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | James A. Pearce | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | John Pearce | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Beula Mae Pearce | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Tex-El Oil and Gas, Inc. | W | 0.08000000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | William Walters | W | 0.02000000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Fred J. Wieder, Sr. | W | 0.00500000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Linda Wieland | W | 0.01000000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Don Williams | W | 0.01000000 | 42-149-30991 | Fayette |
| ATLANTA-HATFIELD 1H | Bill Zeltwanger | W | 0.00907500 | 42-149-30991 | Fayette |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| ATLANTA-HATFIELD 1H Total | | | 1.00000000 | | |
| | | | | | |
| BLACK NO. 1 | Cubby Bair | W | 0.00500000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | EASOURCE, INC. | W | 0.02000000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Echelon Oil & Gas, LLC | W | 0.07000000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Bill Fenn | W | 0.03000000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Edward Gage | W | 0.02000000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Richard H. Holt | W | 0.01000000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Charlotte Jaehne | W | 0.00500000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Herman Jaehne | W | 0.00500000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | SOUTH TEXAS OIL COMPANY | W | 0.77375000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Merlyn Metzger | W | 0.01000000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Paula Kay Moore | W | 0.00250000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | James Myers | W | 0.01125000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | John Pearce | W | 0.00500000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Roy Prichard | W | 0.00750000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Scott Rohloff | W | 0.01000000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Roger W. Slayton | W | 0.01000000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Russell R. Urban | W | 0.00250000 | 42-021-31576 | Bastrop |
| BLACK NO. 1 | Fred J. Wieder, Sr. | W | 0.00250000 | 42-021-31576 | Bastrop |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |

| Property Name | Owner Name | Int Type | Working Int | Property API# | County |
|---|---|---|---|---|---|
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| BLACK NO. 1 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| DERNEHL | Charlotte Jaehne | W | 0.00500000 | 42-149-32519 | Fayette |
| DERNEHL | SOUTH TEXAS OIL COMPANY | W | 0.99500000 | 42-149-32519 | Fayette |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| DERNEHL Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| EL CAPITAN 1H | Gerdes Family LTD | W | 0.20000000 | 42-287-31538 | Lee |
| EL CAPITAN 1H | Richard H. Holt | W | 0.05000000 | 42-287-31538 | Lee |
| EL CAPITAN 1H | SOUTH TEXAS OIL COMPANY | W | 0.55000000 | 42-287-31538 | Lee |
| EL CAPITAN 1H | James A. Pearce | W | 0.06000000 | 42-287-31538 | Lee |
| EL CAPITAN 1H | John Pearce | W | 0.14000000 | 42-287-31538 | Lee |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| EL CAPITAN 1H Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| ELO#3 | Coyote Interests | W | 0.05000000 | 42-149-32004 | Fayette |
| ELO#3 | Discovery Capital, LLC | W | 0.05000000 | 42-149-32004 | Fayette |
| ELO#3 | Betty J. Dobos | W | 0.10000000 | 42-149-32004 | Fayette |
| ELO#3 | Joseph H. Fisher | W | 0.03000000 | 42-149-32004 | Fayette |
| ELO#3 | Charles Johnson | W | 0.20000000 | 42-149-32004 | Fayette |
| ELO#3 | SOUTH TEXAS OIL COMPANY | W | 0.29000000 | 42-149-32004 | Fayette |
| ELO#3 | Gaylon Overton | W | 0.02000000 | 42-149-32004 | Fayette |
| ELO#3 | John Pearce | W | 0.03000000 | 42-149-32004 | Fayette |
| ELO#3 | David V. Rist | W | 0.03000000 | 42-149-32004 | Fayette |
| ELO#3 | STABLE ENERGY, LP | W | 0.10000000 | 42-149-32004 | Fayette |
| ELO#3 | Bill Zeltwanger | W | 0.10000000 | 42-149-32004 | Fayette |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| ELO#3 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| GRAECO 1 | BairTex Energy, Inc. | W | 0.06000000 | 42-021-31572 | Bastrop |
| GRAECO 1 | EASOURCE, INC. | W | 0.02000000 | 42-021-31572 | Bastrop |
| GRAECO 1 | Echelon Oil & Gas, LLC | W | 0.07000000 | 42-021-31572 | Bastrop |
| GRAECO 1 | Bill Fenn | W | 0.03000000 | 42-021-31572 | Bastrop |
| GRAECO 1 | Edward Gage | W | 0.02000000 | 42-021-31572 | Bastrop |
| GRAECO 1 | Richard H. Holt | W | 0.01000000 | 42-021-31572 | Bastrop |
| GRAECO 1 | Charlotte Jaehne | W | 0.00500000 | 42-021-31572 | Bastrop |
| GRAECO 1 | Herman Jaehne | W | 0.00500000 | 42-021-31572 | Bastrop |
| GRAECO 1 | SOUTH TEXAS OIL COMPANY | W | 0.70000000 | 42-021-31572 | Bastrop |
| GRAECO 1 | Merlyn Metzger | W | 0.01000000 | 42-021-31572 | Bastrop |
| GRAECO 1 | James Myers | W | 0.01500000 | 42-021-31572 | Bastrop |
| GRAECO 1 | Roy Prichard | W | 0.01000000 | 42-021-31572 | Bastrop |

| Property Name | Owner Name | Int Type | Working Int | Property API# | County |
|---|---|---|---|---|---|
| GRAECO 1 | Scott Rohloff | W | 0.01000000 | 42-021-31572 | Bastrop |
| GRAECO 1 | Roger W. Slayton | W | 0.01000000 | 42-021-31572 | Bastrop |
| GRAECO 1 | Fred J. Wieder, Sr. | W | 0.00500000 | 42-021-31572 | Bastrop |
| GRAECO 1 | Bill Zeltwanger | W | 0.02000000 | 42-021-31572 | Bastrop |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| GRAECO 1 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| | | W Total | 1.00000000 | | |
| | | R1 Total | 0.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| HESTER WELL UNIT 1H Total | | | 1.00000000 | | |
| | | | | | |
| KIMBERLY 1 | Richard H. Holt | W | 0.00980000 | 42-287-31431 | Lee |
| KIMBERLY 1 | SOUTH TEXAS OIL COMPANY | W | 0.64020000 | 42-287-31431 | Lee |
| KIMBERLY 1 | John Pearce | W | 0.05000000 | 42-287-31431 | Lee |
| KIMBERLY 1 | Sandel Energy, Inc. | W | 0.30000000 | 42-287-31431 | Lee |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| KIMBERLY 1 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| KING WELL | Charlotte Jaehne | W | 0.00500000 | 42-287-30581 | Lee |
| KING WELL | SOUTH TEXAS OIL COMPANY | W | 0.99500000 | 42-287-30581 | Lee |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| KING WELL Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| KLEIBER WELL 1 | Charlotte Jaehne | W | 0.00500000 | 42-287-32338 | Lee |
| KLEIBER WELL 1 | SOUTH TEXAS OIL COMPANY | W | 0.98500000 | 42-287-32338 | Lee |
| KLEIBER WELL 1 | Alan Turner | W | 0.01000000 | 42-287-32338 | Lee |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| KLEIBER WELL 1 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| KRAUSE "A" 2 | Crystal Mountain Resources, LP | W | 0.00000000 | 42-287-31514 | Lee |
| KRAUSE "A" 2 | Crystal Mountain Resources, LP | W | 0.03750000 | 42-287-31514 | Lee |
| KRAUSE "A" 2 | SOUTH TEXAS OIL COMPANY | W | 0.00000000 | 42-287-31514 | Lee |
| KRAUSE "A" 2 | SOUTH TEXAS OIL COMPANY | W | 0.96250000 | 42-287-31514 | Lee |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |

As of 1/15/2010  2:22 PM

| Property Name | Owner Name | Int Type | Working Int | Property API# | County |
|---|---|---|---|---|---|
| | | O Total | 0.00000000 | | |
| KRAUSE "A" 2 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| LINDA JONES | B. Ray Holifield | W | 0.05000000 | 42-287-31879 | Lee |
| LINDA JONES | Charlotte Jaehne | W | 0.00500000 | 42-287-31879 | Lee |
| LINDA JONES | SOUTH TEXAS OIL COMPANY | W | 0.79500000 | 42-287-31879 | Lee |
| LINDA JONES | Shasta Corporation | W | 0.15000000 | 42-287-31879 | Lee |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| LINDA JONES Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| LONIE MAE 1-H | BairTex Energy, Inc. | W | 0.12688789 | 42-287-30754 | Lee |
| LONIE MAE 1-H | Betty J. Dobos | W | 0.02114798 | 42-287-30754 | Lee |
| LONIE MAE 1-H | Echelon Oil & Gas, LLC | W | 0.26000000 | 42-287-30754 | Lee |
| LONIE MAE 1-H | Joseph H. Fisher | W | 0.01057399 | 42-287-30754 | Lee |
| LONIE MAE 1-H | Herman Jaehne | W | 0.00500000 | 42-287-30754 | Lee |
| LONIE MAE 1-H | Mark A. Jaehne | W | 0.00528699 | 42-287-30754 | Lee |
| LONIE MAE 1-H | Agujero Seco Resources, LLC | W | 0.01000000 | 42-287-30754 | Lee |
| LONIE MAE 1-H | SOUTH TEXAS OIL COMPANY | W | 0.46525561 | 42-287-30754 | Lee |
| LONIE MAE 1-H | James A. Pearce | W | 0.01057399 | 42-287-30754 | Lee |
| LONIE MAE 1-H | John Pearce | W | 0.01057399 | 42-287-30754 | Lee |
| LONIE MAE 1-H | Tex-El Oil and Gas, Inc. | W | 0.07000000 | 42-287-30754 | Lee |
| LONIE MAE 1-H | Henry Verstraeten | W | 0.00234978 | 42-287-30754 | Lee |
| LONIE MAE 1-H | Jason Verstraeten | W | 0.00234978 | 42-287-30754 | Lee |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| LONIE MAE 1-H Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| MAGGIE 1 | Cubby Bair | W | 0.02000000 | 42-021-31535 | Bastrop |
| MAGGIE 1 | SOUTH TEXAS OIL COMPANY | W | 0.95000000 | 42-021-31535 | Bastrop |
| MAGGIE 1 | Merlyn Metzger | W | 0.01000000 | 42-021-31535 | Bastrop |
| MAGGIE 1 | Bill Zeltwanger | W | 0.02000000 | 42-021-31535 | Bastrop |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| MAGGIE 1 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| MARY ZONA UNIT 1 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| McPHAUL 1 | Exodus Exploration | W | 0.01875000 | 42-021-31599 | Bastrop |
| McPHAUL 1 | Bill Fenn | W | 0.03000000 | 42-021-31599 | Bastrop |
| McPHAUL 1 | Richard H. Holt | W | 0.01000000 | 42-021-31599 | Bastrop |

As of 1/15/2010  2:22 PM

| Property Name | Owner Name | Int Type | Working Int | Property API# | County |
|---|---|---|---|---|---|
| McPHAUL 1 | SOUTH TEXAS OIL COMPANY | W | 0.92875000 | 42-021-31599 | Bastrop |
| McPHAUL 1 | Merlyn Metzger | W | 0.01000000 | 42-021-31599 | Bastrop |
| McPHAUL 1 | Paula Kay Moore | W | 0.00250000 | 42-021-31599 | Bastrop |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| McPHAUL 1 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| MILTON KURTEN 1 | Charlotte Jaehne | W | 0.00500000 | 42-041-30689 | Brazos |
| MILTON KURTEN 1 | SOUTH TEXAS OIL COMPANY | W | 0.99500000 | 42-041-30689 | Brazos |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| MILTON KURTEN 1 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| MINNIE UNIT 1 | Charlotte Jaehne | W | 0.00500000 | 42-287-31281 | Lee |
| MINNIE UNIT 1 | SOUTH TEXAS OIL COMPANY | W | 0.99500000 | 42-287-31281 | Lee |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| MINNIE UNIT 1 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| NOACK-MENZEL 1 | SOUTH TEXAS OIL COMPANY | W | 1.00000000 | 42-287-30849 | Lee |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| NOACK-MENZEL 1 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| STEINBACH 1 | Dr. Richard Anderson | W | 0.00375000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Cubby Bair | W | 0.01000000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | BairTex Energy, Inc. | W | 0.06000000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | EASOURCE, INC. | W | 0.02000000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Echelon Oil & Gas, LLC | W | 0.07000000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Bill Fenn | W | 0.03000000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Edward Gage | W | 0.02000000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Richard H. Holt | W | 0.01000000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Charlotte Jaehne | W | 0.00500000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Herman Jaehne | W | 0.00500000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | SOUTH TEXAS OIL COMPANY | W | 0.70500000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Merlyn Metzger | W | 0.01000000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Paula Kay Moore | W | 0.00500000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | John Pearce | W | 0.00750000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Roy Prichard | W | 0.00875000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Scott Rohloff | W | 0.01000000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Roger W. Slayton | W | 0.01000000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Russell R. Urban | W | 0.00500000 | 42-021-31571 | Bastrop |
| STEINBACH 1 | Fred J. Wieder, Sr. | W | 0.00500000 | 42-021-31571 | Bastrop |
| | | W Total | 1.00000000 | | |

| Property Name | Owner Name | Int Type | Working Int | Property API# | County |
|---|---|---|---|---|---|
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| STEINBACH 1 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| SUSIE 2H | Crystal Mountain Resources, LP | W | 0.03750000 | 42-149-32818 | Fayette |
| SUSIE 2H | Richard H. Holt | W | 0.01000000 | 42-149-32818 | Fayette |
| SUSIE 2H | SOUTH TEXAS OIL COMPANY | W | 0.95250000 | 42-149-32818 | Fayette |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| SUSIE 2H Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| TROUSDALE 1 | Ray & Nadine Billingsley Living Trust | W | 0.00350000 | 42-149-30367 | Fayette |
| TROUSDALE 1 | Glynn Rae Pichot | W | 0.01400000 | 42-149-30367 | Fayette |
| TROUSDALE 1 | Theresa Cook | W | 0.00700000 | 42-149-30367 | Fayette |
| TROUSDALE 1 | R.W. Holman | W | 0.01400000 | 42-149-30367 | Fayette |
| TROUSDALE 1 | Charlotte Jaehne | W | 0.00500000 | 42-149-30367 | Fayette |
| TROUSDALE 1 | Charlotte Jaehne | W | 0.00250000 | 42-149-30367 | Fayette |
| TROUSDALE 1 | Mark A. Jaehne | W | 0.00750000 | 42-149-30367 | Fayette |
| TROUSDALE 1 | SOUTH TEXAS OIL COMPANY | W | 0.94650000 | 42-149-30367 | Fayette |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| TROUSDALE 1 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| TYRA #2 | Cubby Bair | W | 0.00500000 | 42-021-31583 | Bastrop |
| TYRA #2 | EASOURCE, INC. | W | 0.02000000 | 42-021-31583 | Bastrop |
| TYRA #2 | Echelon Oil & Gas, LLC | W | 0.07000000 | 42-021-31583 | Bastrop |
| TYRA #2 | Bill Fenn | W | 0.03000000 | 42-021-31583 | Bastrop |
| TYRA #2 | Richard H. Holt | W | 0.01000000 | 42-021-31583 | Bastrop |
| TYRA #2 | Charlotte Jaehne | W | 0.00500000 | 42-021-31583 | Bastrop |
| TYRA #2 | Herman Jaehne | W | 0.00500000 | 42-021-31583 | Bastrop |
| TYRA #2 | SOUTH TEXAS OIL COMPANY | W | 0.80375000 | 42-021-31583 | Bastrop |
| TYRA #2 | Merlyn Metzger | W | 0.01000000 | 42-021-31583 | Bastrop |
| TYRA #2 | Paula Kay Moore | W | 0.00250000 | 42-021-31583 | Bastrop |
| TYRA #2 | John Pearce | W | 0.00500000 | 42-021-31583 | Bastrop |
| TYRA #2 | Roy Prichard | W | 0.00750000 | 42-021-31583 | Bastrop |
| TYRA #2 | Scott Rohloff | W | 0.01000000 | 42-021-31583 | Bastrop |
| TYRA #2 | Paul Russo | W | 0.01125000 | 42-021-31583 | Bastrop |
| TYRA #2 | Russell R. Urban | W | 0.00250000 | 42-021-31583 | Bastrop |
| TYRA #2 | Fred J. Wieder, Sr. | W | 0.00250000 | 42-021-31583 | Bastrop |
| | | W Total | 1.00000000 | | |
| | | R Total | 0.00000000 | | |
| | | O1 Total | 0.00000000 | | |
| | | O Total | 0.00000000 | | |
| TYRA #2 Total | | | 1.00000000 | | |
| | | | | | |
| | | | | | |
| TYRA 1 | Cubby Bair | W | 0.00500000 | 42-021-31574 | Bastrop |
| TYRA 1 | BairTex Energy, Inc. | W | 0.06000000 | 42-021-31574 | Bastrop |

As of 1/15/2010 2:22 PM

| Property Name | Owner Name | Int Type | Working Int | Property API# | County |
|---|---|---|---|---|---|
| TYRA 1 | EASOURCE, INC. | W | 0.02000000 | 42-021-31574 | Bastrop |
| TYRA 1 | Echelon Oil & Gas, LLC | W | 0.07000000 | 42-021-31574 | Bastrop |
| TYRA 1 | Bill Fenn | W | 0.03000000 | 42-021-31574 | Bastrop |
| TYRA 1 | Edward Gage | W | 0.02000000 | 42-021-31574 | Bastrop |
| TYRA 1 | Richard H. Holt | W | 0.01000000 | 42-021-31574 | Bastrop |
| TYRA 1 | Charlotte Jaehne | W | 0.00500000 | 42-021-31574 | Bastrop |
| TYRA 1 | Herman Jaehne | W | 0.00500000 | 42-021-31574 | Bastrop |
| TYRA 1 | SOUTH TEXAS OIL COMPANY | W | 0.71375000 | 42-021-31574 | Bastrop |
| TYRA 1 | Merlyn Metzger | W | 0.01000000 | 42-021-31574 | Bastrop |
| TYRA 1 | Paula Kay Moore | W | 0.00250000 | 42-021-31574 | Bastrop |
| TYRA 1 | John Pearce | W | 0.00500000 | 42-021-31574 | Bastrop |
| TYRA 1 | Roy Prichard | W | 0.00750000 | 42-021-31574 | Bastrop |
| TYRA 1 | Scott Rohloff | W | 0.01000000 | 42-021-31574 | Bastrop |
| TYRA 1 | Paul Russo | W | 0.01125000 | 42-021-31574 | Bastrop |
| TYRA 1 | Roger W. Slayton | W | 0.01000000 | 42-021-31574 | Bastrop |
| TYRA 1 | Russell R. Urban | W | 0.00250000 | 42-021-31574 | Bastrop |
| TYRA 1 | Fred J. Wieder, Sr. | W | 0.00250000 | 42-021-31574 | Bastrop |
|  |  | W Total | 1.00000000 |  |  |
|  |  | R Total | 0.00000000 |  |  |
|  |  | O1 Total | 0.00000000 |  |  |
|  |  | O Total | 0.00000000 |  |  |
| TYRA 1 Total |  |  | 1.00000000 |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| VICTOR ELIAS 1 | Charlotte Jaehne | W | 0.00500000 | 42-149-30676 | Fayette |
| VICTOR ELIAS 1 | SOUTH TEXAS OIL COMPANY | W | 0.99500000 | 42-149-30676 | Fayette |
|  |  | W Total | 1.00000000 |  |  |
|  |  | R Total | 0.00000000 |  |  |
|  |  | O1 Total | 0.00000000 |  |  |
|  |  | O Total | 0.00000000 |  |  |
| VICTOR ELIAS 1 Total |  |  | 1.00000000 |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| WEBB #1 | Cubby Bair | W | 0.00500000 | 42-02131585 | Bastrop |
| WEBB #1 | BairTex Energy, Inc. | W | 0.06000000 | 42-02131585 | Bastrop |
| WEBB #1 | EASOURCE, INC. | W | 0.02000000 | 42-02131585 | Bastrop |
| WEBB #1 | Echelon Oil & Gas, LLC | W | 0.07000000 | 42-02131585 | Bastrop |
| WEBB #1 | Bill Fenn | W | 0.03000000 | 42-02131585 | Bastrop |
| WEBB #1 | Richard H. Holt | W | 0.01000000 | 42-02131585 | Bastrop |
| WEBB #1 | Charlotte Jaehne | W | 0.00500000 | 42-02131585 | Bastrop |
| WEBB #1 | Herman Jaehne | W | 0.00500000 | 42-02131585 | Bastrop |
| WEBB #1 | SOUTH TEXAS OIL COMPANY | W | 0.74875000 | 42-02131585 | Bastrop |
| WEBB #1 | Merlyn Metzger | W | 0.01000000 | 42-02131585 | Bastrop |
| WEBB #1 | John Pearce | W | 0.00500000 | 42-02131585 | Bastrop |
| WEBB #1 | Roy Prichard | W | 0.00750000 | 42-02131585 | Bastrop |
| WEBB #1 | Scott Rohloff | W | 0.01000000 | 42-02131585 | Bastrop |
| WEBB #1 | Paul Russo | W | 0.01125000 | 42-02131585 | Bastrop |
| WEBB #1 | Fred J. Wieder, Sr. | W | 0.00250000 | 42-02131585 | Bastrop |
|  |  | W Total | 1.00000000 |  |  |
|  |  | R Total | 0.00000000 |  |  |
|  |  | O1 Total | 0.00000000 |  |  |
|  |  | O Total | 0.00000000 |  |  |
| WEBB #1 Total |  |  | 1.00000000 |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| YOUNGER JE UNIT 1 | Charlotte Jaehne | W | 0.00500000 | 42-041-31008 | Brazos |

As of 1/15/2010  2:22 PM

| Property Name | Owner Name | Int Type | Working Int | Property API# | County |
|---|---|---|---|---|---|
| YOUNGER JE UNIT 1 | SOUTH TEXAS OIL COMPANY | W | 0.99500000 | 42-041-31008 | Brazos |
|  |  | W Total | 1.00000000 |  |  |
|  |  | R Total | 0.00000000 |  |  |
|  |  | O1 Total | 0.00000000 |  |  |
|  |  | O Total | 0.00000000 |  |  |
| YOUNGER JE UNIT 1 Total |  |  | 1.00000000 |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| ZOCH-NOACK UNIT 1 | SOUTH TEXAS OIL COMPANY | W | 1.00000000 | 42-287-30789 | Lee |
|  |  | W Total | 1.00000000 |  |  |
|  |  | R Total | 0.00000000 |  |  |
|  |  | O1 Total | 0.00000000 |  |  |
|  |  | O Total | 0.00000000 |  |  |
| ZOCH-NOACK UNIT 1 Total |  |  | 1.00000000 |  |  |

# EXHIBIT B

414.095 acres, more or less, out of the James H. Bostick Survey A-13, Bastrop County Texas and being the same land as described in that certain deed dated August 23,1995 from the Farm Credit Bank of Texas to Graeco 2 ltd. as recorded in Volume 764 Page 776 of the Deed Records of Bastrop County Texas and being the same as TRACT 1 described in that Memorandum of Oil, Gas and Mineral Lease dated March 5, 2006 from Graeco Ranch LLC as Lessor to Leexus Oil & Gas, LLP as Lessee and recorded in Book 1800 Page 712 of the Official Public Records of Bastrop County Texas.

# EXHIBIT C

LEEXUS % ORRI

| WELL NAME | TEXAS COUNTY | RAILROAD COMMISSION API NO. | Leexus % ORRI |
|---|---|---|---|
| Alford | Gonzales | 42-177-30584 | 3.000000 |
| Ansel-Lehman 1-H | Fayette | 42-149-30545 | 2.000000 |
| Atlanta-Hatfield | Fayette | 42-149-30991 | 2.928760 |
| Becker Oltman | Lee | 42-287-32176 | 1.631483 |
| Black | Bastrop | 42-021-31576 | 0.000000 |
| Brocksmith | Brazos | 42-041-31117 | 0.000000 |
| Cheree | Brazos | 42-041-30948 | 5.000000 |
| Dernehl #2 | Fayette | 42-149-32517 | 3.500000 |
| Durrenberger | Lee | 42-287-32456 | 0.000000 |
| El Capitan | Lee | 42-287-31538 | 4.533000 |
| Ellisor B #2 | Bastrop/ Fayette | 42-149-31333 | 0.000000 |
| Elo #3 | Fayette | 42-149-32004 | 1.000000 |
| Fred Becker | Lee | 42-287-30934 | 7.000000 |
| GBR #1 | Bastrop | 42-021-31587 | 0.000000 |
| Graeco, Tract 1 (As described in Exhibit B) | Bastrop | 42-021-31572 | 1.000000 |
| Herklotz-Kruemcke | Lee | 42-287-32526 | 4.000000 |
| Hester | Burleson | 42-051-32115 | 1.927672 |
| Kehlenbrink | Brazos | 42-041-31108 | 7.000000 |
| Kimberly-APO | Lee | 42-287-31431 | 2.100000 |
| King | Lee | 42-287-30581 | 3.312500 |
| Kleiber | Fyette/Lee | 42-287-32338 | 3.812500 |
| Koehler | Lee | 42-287-31616 | 1.000000 |
| Krause | Bastrp/Lee | 42-287-31514 | 0.000000 |
| Linda Jones | Lee | 42-287-31879 | 4.083330 |
| Lonie Mae | Lee | 42-287-30754 | 2.879499 |
| Lydia Rubach | Burleson | 42-051-33022 | 3.775000 |
| Maggie | Bastrop | 42-021-31535 | 4.733333 |
| Mary Zona | Lee | 42-287-30690 | 3.750000 |
| McFarland | Burleson | 42-051-33057 | 3.513900 |
| McPhaul | Bastrop | 42-021-31599 | 0.000000 |
| Milton Kurten | Brazos | 42-041-30689 | 0.400000 |
| Minnie | Lee | 42-287-31281 | 0.821500 |
| Noack Menzel | Lee | 42-287-30849 | 5.000000 |
| Noack, R.W. | Lee | 42-287-32539 | 3.985405 |
| Petrich-Lorenz | Fayette | 42-149-33153 | 4.270116 |
| Scarmado | Burleson | 42-051-33482 | 0.000000 |

| Steinbach | Bastrop | 42-021-31571 | 0.000000 |
|---|---|---|---|
| Stoppelberg #1 | Bastrop | 42-021-31591 | 0.000000 |
| Susie #1 | Fayette | 42-149-31905 | 7.959586 |
| Susie 2H | Fayette | 42-149-32818 | 7.959586 |
| T.O. | Burleson | 42-051-30934 | 4.150410 |
| T.O. 1-H | Burleson | | 0.000000 |
| Trousdale | Fayette | 42-149-30367 | 3.398000 |
| Tyra #1 | Bastrop | 42-021-31574 | 0.000000 |
| Tyra #2 | Bastrop | 42-021-31583 | 0.000000 |
| Tyra #3-H | Bastrop | 42-021-31588 | 0.000000 |
| Victor Elias | Fayette | 42-149-30676 | 2.500000 |
| Victor Elias 1-H | Fayette | | 0.000000 |
| Wachsmann | Bastrop | 42-021-31590 | 0.000000 |
| Webb #1 | Bastrop | 42-021-31585 | 0.000000 |
| Webb #2 | Bastrop | | 0.000000 |
| Williams 1 | Brazos | 42-041-30959 | 0.800003 |
| Williams 2 | Brazos | 42-041-31025 | 0.800003 |
| Williams 2-H | Brazos | | 0.000000 |
| Younger | Brazos | 42-041-31008 | 4.153896 |
| Zoch, Willie | Lee | 42-287-30695 | 4.579170 |
| Zoch, Willie "A" #2 | Lee | 42-287-32227 | 4.979170 |
| Zoch-Noack | Lee | 42-287-30789 | 4.356774 |

# EXHIBIT D

## BASTROP I PROPERTIES

Assignment of Overriding Royalty from Leexus Oil & Gas, LLP (or their successors and/or current entities) to STO Operating Company in the Bastrop I wells and leases in accordance with the release and waiver agreement in the May 5, 2008 Settlement Agreement between Leexus Oil & Gas, LLP and STO Operating Company.

### Graeco Well

414.095 acres out of the Teresa Highsmith Survey A-194 and being same land described in deed from Farm Credit bank of Texas to Graeco 2 Ltd. dated August 23, 1995 recorded in Volume 764 Page 776 Deed Records of Bastrop County Texas and being all of TRACT 1 of that certain Oil, Gas and Mineral Lease the Memorandum of which is recorded in Book 1656 Page 571 of the Official Public Records of Bastrop County Texas.

**3.75000% ORRI (LESS the Agreed 1.00000% ORRI conveyed back to Leexus Oil & Gas LLP)**

### Steinbach Well

151.1 acres out of the Jesse Holderman Survey A-190 being described in that certain Oil Gas and Mineral Lease dated January 30, 2006 between Carl A. Steinbach as Lessor and Leexus Oil & Gas, LLP, as Lessee, the Memorandum of Oil Gas and Mineral Lease being recorded in Book 1659 Page 520 of the Official Public Records of Bastrop County Texas.

151.8 acres out of the Jesse Holderman Survey A-190 being described in that certain Oil Gas and Mineral Lease dated January 30, 2006 between Earl W. Steinbach, as Lessor and Leexus Oil & Gas LLP, as Lessee the Memorandum of Oil Gas and Mineral Lease being recorded in Book 1659 Page 521of the Official Public Records of Bastrop County Texas.

**3.75000% ORRI**

### Tyra #1 Well

160 acres out of the Jesse Holderman Survey A-190 and Charles S. Smith Survey A-310, Bastrop County Texas as described in Exhibit B-1 of that certain Lessor/Lessee Agreement dated December 17, 2007 as recorded in Book 1838 Page 870 if the Official Public Records of Bastrop County between Lewis R. Tyra and Richard N. Tyra as Lessors, and STO Operating Company, as Lessee out of that certain 911.26 acre tract of land described in Oil and Mineral Lease dated March 14, 2006 from Richard N. Tyra , Lessor to Leexus Oil & Gas, LLP, Lessee , the Memorandum of Oil Gas and Mineral Lease as recorded in Book 1683 Page 382 of the Official Public Records of Bastrop County Texas and that certain Oil Gas and Mineral Lease dated March 14, 2006 from Lewis R. Tyra , Lessor to Leexus Oil & Gas, LLP, Lessee , the

Memorandum of Oil Gas and Mineral Lease as recorded in Book 1683 Page 380 of the Official Public Records of Bastrop County Texas as amended.

### 2.50000% ORRI

**Tyra #2 Well**

160.0 acres as described in that certain Declaration of Unit filed by STO Operating Company for the STO -Tyra #2 Unit dated April 14, 2008 and recorded in Book 1827 Page 559 of the Official Public Records of Bastrop County Texas out of the Charles S. Smith Survey A-310, Bastrop County Texas including the following lands and leases;

38.03 acres, called 40.271 acres out of the Charles S. Smith Survey A-310 in Oil Gas and Mineral Lease dated June 20,2006 between Alton Beck, Lessor and Leexus Oil & Gas, LLP, Lessee the Memorandum of Oil Gas and Mineral Lease being recorded in Book 1683 Page 418, Official Public Records of Bastrop County Texas.

121.97 acres out of the Charles S. Smith Survey A-310, Bastrop County Texas being a part of that certain oil Gas and Mineral Lease dated December 19, 2007 from Lewis R. Tyra to STO Operating Company covering 591.26 acres the Memorandum of Oil Gas and Mineral Lease being recorded in Book1806 Page 803 of the Official Public Records of Bastrop County Texas.

121.27 acres out of the Charles S. Smith Survey A-310, Bastrop County Texas being a part of that certain oil Gas and Mineral Lease dated December 19, 2007 from Richard N. Tyra to STO Operating Company covering 591.26 acres the Memorandum of Oil Gas and Mineral Lease being recorded in Book1806 Page 805 of the Official Public Records of Bastrop County Texas.

### 2.896145% ORRI

**McPhaul Well**

141.50 acres, more or less, out of the James H. Bostick Survey A-13, Bastrop County Texas as described in Deed dated September 14, 1992 from James V. McPhaul to James Milton McPhaul and recorded in Volume 643 Page 744 of the Official Public Records of Bastrop County Texas LESS a 1.640 acre tract described in Deed dated march 17, 1999 from Paulette McPhaul to Cynthia and Donny Ahlhorn recorded in Volume 968 Page 979 of the Official Public Records of Bastrop County Texas including all the following lands and leases;

Oil Gas and Mineral Lease dated March 16, 2006 between Paulette Seagert McPhaul, Lessor and Leexus Oil & Gas, LLP, Lessee covering 141.5 acres of land, more or less, as described in Memorandum of Oil Gas and Mineral Lease recorded in Book 1683 Page 378 , Official Public Records of Bastrop County Texas.

### 4.118358% ORRI

**Webb #1 Well**

160 acre as described in that certain Declaration of Unit for the STO Operating Webb No. 1 Unit out of the Charles S. Smith Survey A-310 and the Theresa Highsmith Survey A-194 of Bastrop County Texas as recorded in Book 1827 Page 487 of the Official Public Records of Bastrop County Texas including all of the following lands and leases;

Oil Gas and Mineral Lease dated March 2, 2006 between Doyle Webb, Lessor and Leexus Oil & Gas, LLP, Lessee covering 124.682 acres the Memorandum of Oil Gas and Mineral Lease being recorded in Book 1683 Page 422 of the Official Public Records of Bastrop County Texas.

Oil Gas and Mineral Lease dated June 20, 2006 between Agnes T. Hill, Lessor and Leexus Oil & Gas LLP, Lessee covering 76.592 acres out of the Teresa Highsmith Survey A-194 and the Charles S. Smith Survey A-310, the Memorandum of Oil Gas and Mineral Lease being recorded in Volume 1683 Page 416 of the Official Public Records of Bastrop County Texas and as amended by Amendment of Memorandum of Oil Gas and Mineral Lease dated January 16, 2008 recorded in Book 1810 page 574, Official Public Records Bastrop County Texas.

**4.166667% ORRI**

**Black Well**

160.13 acres, more or less, out of the Jesse Holderman Survey A-190 and being all of TRACT 3 in that certain Partition Deed dated march 16, 1963 from Walter H. Burkhardt et al to Kathene Sophie Black and husband Jerry W. Black as recorded in Volume 160 Page 465 of the Deed Records of Bastrop County Texas including the following lands and leases;

Oil Gas and Mineral Lease dated February 22, 2006 between Jerry Woodward Black Jr., Lessor and Leexus Oil & Gas, LLP, Lessee covering 160.13 acres the Memorandum of Oil Gas and Mineral Lease being recorded in Book 1683 Page 388, Official Public Records of Bastrop County Texas.

Oil Gas and Mineral Lease dated February 22, 2006 between Sharon Kay Tucker, Lessor and Leexus Oil & Gas, LLP, Lessee covering 160.13 acres the Memorandum of Oil Gas and Mineral Lease being recorded in Book 1683 Page 390, Official Public Records of Bastrop County Texas.

Oil Gas and Mineral Lease dated February 22, 2006 between Shelly Marie Chudej, Lessor and Leexus Oil & Gas, LLP, Lessee covering 160.13 acres the Memorandum of Oil Gas and Mineral Lease being recorded in Book 1683 Page 392, Official Public Records of Bastrop County Texas.

Oil Gas and Mineral Lease dated February 22, 2006 between Susanne Irene Behrens, Lessor and Leexus Oil & Gas, LLP, Lessee covering 160.13 acres the Memorandum of Oil Gas and Mineral Lease being recorded in Book 1683 Page 394, Official Public Records of Bastrop County Texas.

**4.166667% ORRI**

**4.16666&% ORRI in EACH of the following non-unitized leases:**

Oil Gas and Mineral Lease dated February 14, 2006 between Harry J. Yantz and wife Nancy Rhae Yantz, Lessor and Leexus Oil & Gas LLP, Lessee covering 160.13 acres more or less out of the Jesse Holderman Survey A-190 Bastrop County Texas as described in Memorandum of Oil Gas and Mineral Lease recorded in Book 1683 Page 384 of the Official Public Records of Bastrop County Texas.

Oil Gas and Mineral Lease dated February 15, 2006 between Bernice C. Foerster, Lessor and Leexus Oil & Gas LLP, Lessee covering 164.27 acres more or less out of the Jesse Holderman Survey A-190 Bastrop County Texas as described in Memorandum of Oil Gas and Mineral Lease recorded in Book 1683 Page 386 of the Official Public Records of Bastrop County Texas.

Oil Gas and Mineral Lease dated April 18, 2006 between Suzanne Ragan, Lessor and Leexus Oil & Gas LLP, Lessee covering 149.17 acres more or less out of the Jesse Holderman Survey A-190 Bastrop County Texas as described in Memorandum of Oil Gas and Mineral Lease recorded in Book 1683 Page 404 of the Official Public Records of Bastrop County Texas.

Oil Gas and Mineral Lease dated June 20, 2006 between Teresa Jeanette Hill Oliver, Lessor and Leexus Oil & Gas LLP, Lessee covering 15.318 acres more or less out of the Charles S. Smith Survey A-310 Bastrop County Texas as described in Memorandum of Oil Gas and Mineral Lease recorded in Book 1683 Page 406 of the Official Public Records of Bastrop County Texas as amended.

 Oil Gas and Mineral Lease dated June 20, 2006 between Ritchie Oliver and Teresa Oliver, Lessor and Leexus Oil & Gas LLP, Lessee covering 15.318 acres more or less out of the Charles S. Smith Survey A-310 Bastrop County Texas as described in Memorandum of Oil Gas and Mineral Lease recorded in Book 1683 Page 408 of the Official Public Records of Bastrop County Texas as amended.

Oil Gas and Mineral Lease dated June 20, 2006 between Thomas Keith Hill, Lessor and Leexus Oil & Gas LLP, Lessee covering 15.318 acres more or less out of the Charles S. Smith Survey A-310 Bastrop County Texas as described in Memorandum of Oil Gas and Mineral Lease recorded in Book 1683 Page 410 of the Official Public Records of Bastrop County Texas as amended.

Oil Gas and Mineral Lease dated June 20, 2006 between David Hill, Lessor and Leexus Oil & Gas LLP, Lessee covering 15.318 acres more or less out of the Charles S. Smith Survey A-310 Bastrop County Texas as described in Memorandum of Oil Gas and Mineral Lease recorded in Book 1683 Page 412 of the Official Public Records of Bastrop County Texas as amended.

Oil Gas and Mineral Lease dated June 20, 2006 between Mary E. Hill, Lessor and Leexus Oil & Gas LLP, Lessee covering 15.318 acres more or less out of the Charles S. Smith Survey A-310 Bastrop County Texas as described in Memorandum of Oil Gas and Mineral Lease recorded in Book 1683 Page 414 of the Official Public Records of Bastrop County Texas as amended.

Oil Gas and Mineral Lease dated June 20, 2006, between Frank R. Jewell and wife Margaret C. Jewell, Lessors and Leexus Oil & Gas, LLP, Lessee covering 33.992 acres out of the Charles Smith Survey A-310, Bastrop County Texas, as described in memorandum of Oil Gas and Mineral Lease recorded in book 1683 Page 420, Official Public Records of Bastrop County Texas.

# EXHIBIT E

2004 Oil and Gas Lease Form
Paid Up Lease w/Horizontal Pooling

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER**

# PAID UP OIL AND GAS LEASE

THIS AGREEMENT made this the 19th day of January, 2010, between , **BENNIE C. JAEHNE and HERMAN JAEHNE** "Lessor", (whether one or more), whose address is_____ and **STO OPERATING COMPANY** "Lessee", whose address is **300 E. Sonterra Blvd., Suite 1220, San Antonio, Texas 78258.**

### WITNESSETH:

1.      Lessor, in consideration of **Ten Dollars and Other Valuable Consideration** ($10.00 & OVC) receipt of which is hereby acknowledged, and of the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals (whether or not similar to those mentioned), together with the right to make surveys on said land and lay pipe lines and production facilities and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. The land covered hereby, herein called "said land", is located in the County of **LEE**, State of **TEXAS**, and is described as follows:

> **9.184 acres of land, more or less, out of the J. D. G. Varelman League, A-20, Lee County Texas, described in three (3) tracts as follows:**

> **Tract One:      1.66 acres of land, more or less, out of the J. D. G. Varelman League, A-20, Lee County, Texas, being the same land described in that certain Warranty Deed dated February 13, 1984, from Post Oak Place, Inc. to Humble Exploration Co., Inc., recorded in Volume 447 Page 187 of the Real Property Records of Lee County Texas.**

> **Tract Two:      6.524 acres of land, more or less, out of the J. D. G. Varelman League A-20, Lee County Texas and being all of that certain 7.524 acres of land described in that land described in that certain Warranty Deed dated February 13, 1984 from Post Oak Place, Inc. to John Goodson, recorded in Volume 447 Page 180 of the Real Property Records of Lee County Texas LESS and EXCEPT 1.0 acres, being the same land described in that certain Warranty deed filed for record on November 7, 1986 from Bennie Jaehne and wife Charlotte Jaehne to Carey B. Boethel, Trustee as recorded in Volume 544 Page 233 of the Real Property Records of Lee County Texas.**

> **Tract Three:      1.0 acre of land, more or less, out of the J. D. G. Varelman League, A-20 Lee County Texas and being the same land described in that certain Warranty Deed filed for record on November 7, 1986 from Bennie Jaehne and wife Charlotte Jaehne to Carey B. Boethel, Trustee as recorded in Volume 544 Page 233 of the Real Property Records of Lee County Texas.**

Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land. For the purpose of determining the amount of any bonus, delay rental or other payment hereunder, said land shall be deemed to contain **9.184 acres**, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof. Lessor accepts the bonus and agrees to accept the delay rental as lump sum consideration for this lease and all rights and options hereunder. This is a "Paid-Up" lease in that the annual delay rentals have been and are fully paid in advance.

2.      Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of **Three (3)** years from the effective date hereof, hereinafter called "primary term". and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3.      As royalty, lessee covenants and agrees: (a) To deliver to the credit of lessor, in the pipe line to which lessee may connect its wells, the equal **one-fifth (1/5)** part of all oil produced and saved by lessee from said land, or from time to time, at the option of lessee, to pay lessor the average posted market price of such **one-fifth (1/5)** part of such oil at the wells as of the day it

is run to the pipe line or storage tanks, lessor's interest, in either case, to bear **one-fifth (1/5)** of the cost of treating oil to render it marketable pipe line oil; (b) To pay lessor on gas and casinghead gas produced from said land (1) when sold by lessee, **one-fifth (1/5)** of the amount realized by lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of **one-fifth (1/5)** of such gas and casinghead gas; (c) To pay lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing oil or gas, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being produced from said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender, by check or draft of lessee, as royalty, a sum equal to the amount of Ten dollars (**$10.00**) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing, and may be deposited in a depository bank provided herein. Nothing herein shall impair lessee's right to release as provided in paragraph 5 hereof. In event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

4.  Lessee is hereby granted the right, at its option, the continuing right, but not the obligation, to pool or unitize all or any part of the land covered by this lease with any other land, leases or interests, as to any or all minerals or horizons, either before or after commencement of production, whenever Lessee deems it necessary or proper to do so in order to prudently explore, develop or operate the leased premises. A unit established for the pooling an oil well which is not a horizontal completion shall not exceed more than 80 surface acres, plus 10% acreage tolerance; and for an oil well which is a horizontal completion or a gas well, whether or not horizontally completed, shall not exceed 640 acres plus 10% acreage tolerance, provided that larger units may be formed for an oil well or a gas well in order to conform to any well spacing or density pattern permitted by any governmental authority having jurisdiction over such matters. The term "horizontal completion" shall mean an oil well or a gas well in which the horizontal component of the gross completion interval exceeds 100 feet in length. Lessee may pool or combine land covered by this lease or any portions thereof, as above provided as to oil in any one or more strata and as to gas in any one or more strata. Units formed by pooling as to any stratum or strata need not conform in size or area with units formed as to any other stratum or strata and oil units need not conform as to area with gas units. If larger units than any of those herein permitted, either at the time established, or after enlargement, are permitted under any governmental rule or order, for the drilling or operation of a well at a regular location, or for obtaining maximum allowable from any well to be drilled, drilling, or already drilled, any such unit may be established or enlarged to conform to the size required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filing it for record in the public office in which this lease is recorded. Each of said options may be exercised by lessee at any time and from time to time while this lease is in force, and whether before or after production has been established either on said land, or on the portion of said land included in the unit, or on other land unitized therewith. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be mineral, royalty, or leasehold interests in lands within the unit which are not effectively pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted upon said land under this lease. There shall be allocated to the land covered by this lease within each such unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that proportion of the total production of unitized minerals from the unit, after deducting any used in lease or unit operations, which the number of surface acres in such land (or in each such separate tract) covered by this lease within the unit bears to the total number of surface acres in the unit, and the production so allocated shall be considered for all purposes, including payment or delivery of royalty, overriding royalty and any other payments out of production, to be the entire production of unitized minerals from the land to which allocated in the same manner as though produced therefrom under the terms of this lease. The owner of the reversionary estate of any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall satisfy any limitation of term requiring production of oil or gas. The formation of any unit hereunder which includes land not covered by this lease shall not have the effect of exchanging or transferring any interest under this lease (including, without limitation, any delay rental and shut-in royalty which may become payable under this lease) between parties owning interests in land covered by this lease and parties owning interests in land not covered by this lease. Neither shall it impair the right of lessee to release as provided in paragraph 5 hereof, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. At any time while this lease is in force lessee may dissolve any unit established hereunder by filing for record in

the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interests as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but lessee shall nevertheless have the right to pool or unitize as provided in this paragraph 4 with consequent allocation of production as herein provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises. Pooling hereunder shall not constitute a cross-conveyance of interests.

5.       Lessee may at any time and from time to time execute and deliver to lessor or file for record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest.

6.       Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

7.       Lessee shall have the use, free from royalty, of water, other than from lessor's water wells, and of oil and gas produced from said land in all operations hereunder, and Lessor's royalty shall be computed after deducting any so used. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. No well shall be drilled nearer than 200 feet to the house or barn now on said land without the consent of the lessor. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

8.       The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in ownership occurs by reason of the death of the owner, lessee may, nevertheless pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

9.       In the event lessor considers that lessee has not complied with all its obligations hereunder, both express and implied, lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor. The service of said notice shall be precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any acts by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. If this lease is cancelled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable governmental regulations, (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules require; and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10.      Lessor hereby warrants and agrees to defend title to said land against the claims of all persons whomsoever. Lessor's rights and interests hereunder shall be charged primarily with any mortgages and taxes or other liens, or interests and other charges on said land, but lessor agrees that lessee shall have the right at any time to pay or reduce same for lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to lessor and/or assigns under this lease. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties, delay rentals, and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease

(whether or not owned by lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard to whether it is executed by all those named herein as lessor.

11.    If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial) beyond the reasonable control of lessee, the primary term shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

**FOR ADDITIONAL PROVISIONS TO THIS LEASE, SEE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF.**

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

**BENNIE C. JAEHNE**

**HERMAN JAEHNE**

### ACKNOWLEDGEMENT

STATE OF TEXAS          §

COUNTY OF LEE          §

This instrument was acknowledged before me on the _____ day of _____, 2010 by Bennie C. Jaehne.

NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS          §

COUNTY OF LEE          §

This instrument was acknowledged before me on the _____ day of _____, 2010 by Herman Jaehne.

NOTARY PUBLIC, STATE OF TEXAS

## ADDENDUM

Attached to and by reference made a part of that certain Oil and Gas Lease dated the 19th day of January, 2010, by and between **Bennie C. Jaehne and Herman Jaehne**, as Lessor and **STO OPERATING COMPANY**, as Lessee.

### SUPERCEDING CLAUSE

12.    The foregoing typewritten agreement and provisions shall supercede and govern the provisions in the printed text of this lease wherever such printed form is in conflict and shall inure to the benefit of and be binding on the parties hereto and their respective heirs, representatives, successors and assigns.

### TIMELY ROYALTY PAYMENTS

13.    On the first month's actual production, the royalty payment shall be due within (120) days after the end of the first month's sale of production. Thereafter, all royalty payments on actual production shall be due on

gas production within sixty (60) days and on oil thirty (30) days after the end of the month in which the production was sold. In the event a title opinion is prepared by Lessee, its successors or assigns, covering the leased premises in which a title defect or defects are pointed out, the time from the date of such title opinion until such title defects are cured shall not be included in the time period provided for in this paragraph.

## INDEMNIFICATION

14.  Lessee agrees to indemnify and hold harmless Lessor and Lessor's successors of and from all claims for damages or injury (including but not limited to, attorneys fees and costs of litigation) to third persons or their property, resulting from Lessee's operations hereunder. Excluded from this indemnity however are all injuries and damages caused by Lessor or Lessor's successors, employees, tenants invitees and/or representatives.

## OIL AND GAS ONLY

15.  Notwithstanding anything herein above to the contrary, it is specifically understood and agreed that this lease covers only oil, gas and associated liquid or liquefiable hydrocarbons, but this lease does not cover or include any other minerals or water rights with all other such minerals being reserved to the Lessor herein.

## NO SURFACE USE

16.  It is agreed and understood that there will be no surface operations conducted on the leased premises without the written consent of Lessor.

**SIGNED FOR IDENTIFICATION:**

_____
**Bennie C. Jaehne**

_____
**Herman Jaehne**

# EXHIBIT F

